STATE of Missouri, ex rel. OFFICE OF THE PUBLIC COUNSEL, Appellant,

v.

PUBLIC SERVICE COMMISSION OF MISSOURI, et al., Respondent,

Missouri Public Service, Intervenor–Respondent.

No. WD 46901.

Missouri Court of Appeals, Western District.

Aug. 3, 1993.

___

Douglas E. Micheel, Jefferson City, for appellant.

Steven Dottheim, Jefferson City, for respondent PSC.

James C. Swearengen, Jefferson City, for intervenor-respondent.

Before FENNER, P.J., and ULRICH and SPINDEN, JJ.

ULRICH, Judge.

The Public Counsel, pursuant to section 386.710, RSMo 1986, appeals the Report

and Order of the Missouri Public Service Commission (Commission) which allows Missouri Public Service Company (MPS), a division of UtiliCorp United, Inc., a Delaware corporation, an accounting authority order authorizing MPS to defer and record depreciation expenses and carrying costs pertaining to two construction projects at the Sibley, Missouri, electricity generating station operated by MPS. MPS produces, transmits, distributes, and sells electricity to the public in areas authorized by the Commission. MPS owns and operates three generating units at Sibley known as the Sibley generating station. The ultimate issue presented is whether the Commission's Report and Order granting the accounting authority to MPS to defer and record depreciation expenses and carrying costs of the two projects to another year is legal and reasonable.[1] The Report and Order of the Public Service Commission is affirmed.

Section 393.140, RSMo 1986, establishes the general powers of the Commission. Pursuant to granted authority, the Commission exercises general supervision of all electrical corporations furnishing or transmitting electricity in Missouri and all electrical plants owned, leased or operated by electrical corporations in Missouri. § 393.140(1).

Pursuant to section 393.140, MPS applied to the Commission for an accounting authority order to defer depreciation expenses and carrying costs associated with two construction projects at the Sibley generating station. The first construction project involved rebuilding generation units one and two at Sibley, which is expected to extend the life of both units by approximately twenty years. The second project at the Sibley generation station involves converting the plant to burn low-sulfur western coal. This second construction project was initiated to achieve the standards mandated by the 1990 federal Clean Air Act Amendment by reducing sulfur dioxide emissions. MPS will expend a total of approximately $78,000,000 on the first project, the 1991 and 1992 costs of which are expected to be $14,000,000. MPS will expend approximately $40,000,000 to convert the plant to burn low-sulfur western coal.

The Commission adopted the Uniform System of Accounts in exercise of its authority to prescribe uniform methods of keeping accounts, records, and books for electrical corporations engaged in the sale or distribution of electricity as prescribed by section 393.140(4). 4 CSR 240–20.030. The accounting authority order sought by MPS allows MPS to defer the costs of rebuilding electrical generating units one and two at Sibley and the cost of converting the plant to burn low-sulfur western coal by permitting MPS to record the expenses in Account No. 186.[2] MPS was granted authority in an earlier related case before the Commission to defer to Account No. 186 expenses and carrying costs previously incurred by MPS at the Sibley rebuild and western coal conversion projects.

On December 20, 1991, the Commission entered its report and order granting MPS's application for an accounting au-

---

1. The Commission determined that a time limitation on deferrals is appropriate and reasonable and that deferral cannot be permitted to continue indefinitely. The Commission found that a rate case must be filed by MPS within a reasonable time after deferral for the deferral to be considered by the Commission in the ratemaking process. The Commission determined that for MPS to utilize the authorized deferred costs accounted for in Account No. 186 in this case that MPS must file a rate case within twelve months. The Commission noted that a utility should not be permitted to save deferrals to offset excess earnings in some future period.

2. Account No. 186 (miscellaneous deferred debits) is the Uniform Systems of Accounts account

in which "all debits not elsewhere provided for, such as miscellaneous work in progress, and unusual or extraordinary expenses, not included in other accounts" are recorded for deferral to subsequent years. Expenses recorded in Account No. 186 may be considered in subsequent years in determining rates charged customers. Section 393.135, RSMo 1986 prohibits electrical corporations from demanding any charge "based on the costs of construction in progress upon any existing or new facility" of the corporation or for "any other cost associated with owning, operating, maintaining, or financing any property before it is fully operational and used for service."

thority order. The report and order provided in part

    1. That Missouri Public Service, a division of UtiliCorp United, Inc., be hereby authorized to defer and record in Account 186 depreciation expense and carrying costs associated with the life extension and coal conversion projects at the Sibley Generating Station beginning January 1, 1992. If no rate case is filed on or before December 31, 1992, no recovery of these costs shall be allowed in any subsequent rate case.

The Public Counsel sought relief after the Commission entered its order. On January 8, 1992, the Commission denied the Public Counsel's timely application for rehearing pursuant to section 386.500, RSMo 1986. On February 3, 1992, the Public Counsel filed his petition for writ of review in the Circuit Court of Cole County. On September 15, 1992, the circuit court entered its order affirming the decision of the Public Service Commission. The Public Counsel filed its notice of appeal on September 24, 1992.

## I

As point one on appeal, the Public Counsel claims that the circuit court erred in affirming the Commission's report and order, contending that MPS's application for an accounting authority order was controlled by section 393.140(8) and not section 393.140(4). Subsection 393.140(8) requires the Commission to conduct a hearing. The Commission declared in its report and order that section 393.140(4) was controlling and concluded that the section did not require the Commission to conduct a hearing "[i]f a utility seeks a Commission decision for deferral." Sections 393.140(4) and (8) are as follows:

The commission shall:

    (4) Have power, in its discretion, to prescribe uniform methods of keeping accounts, records and books, to be observed by ... electrical corporations ... engaged in the manufacture, sale or distribution of ... electricity ... for municipal, domestic or other necessary beneficial purpose. It may also, in its discre-

tion, prescribe, by order, forms of accounts, records and memoranda to be kept by such persons and corporations. Notice of alterations by the commission in the required method or form of keeping a system of accounts shall be given to such persons or corporations by the commission at least six months before the same shall take effect. Any other and additional forms of accounts, records and memoranda kept by such corporation shall be subject to examination by the commission.

    (8) Have power to examine the accounts, books, contracts, records, documents and papers of any such corporation or person, and have power, *after hearing,* to prescribe by order the accounts in which particular outlays and receipts shall be entered, charged or credited.

(Emphasis added).

Although it concluded that a hearing was not required, the Commission conducted a complete hearing at which the Public Counsel participated fully. According to the Public Counsel, nothing would have been presented that was not presented at the hearing had the Commission considered its jurisdiction pursuant to section 393.140(8) rather than section 393.140(4). MPS argues that the question of whether its application to the Commission for accounting authority to defer its expense associated with the Sibley plant projects is a contested case requiring a hearing or a noncontested case not requiring a hearing is moot because the Commission conducted a full hearing. The Public Counsel argues that the issue should be addressed anyway because it is a recurring issue of general public interest and will evade appellate review unless this court exercises its discretionary jurisdiction and reviews the issue in this case. *State ex rel. Laclede Gas Co. v. Public Serv. Comm'n,* 535 S.W.2d 561, 565 (Mo.App.1976).

■ Contrary to the position of the Public Counsel, the issue of whether the Commission exercised its authority to consider MPS's request to defer expenses incurred at the Sibley electrical production facility

under subsection 393.140(4) or subsection (8) does not present a situation which will preclude determination of the issue should it be contested in another case, and the refusal to determine the issue in this case will not impair the issue or violate the general public interest. The Public Counsel received the hearing that section 393.-140(8) would have provided, and, if the Commission erroneously determined that its authority to consider MPS's deferral request was under 393.140(4) and not subsection (8), the Public Counsel was not prejudiced. Error without prejudice provides no grounds for reversal. *Neavill v. Klemp*, 427 S.W.2d 446, 448 (Mo.1968); *Patison v. Campbell*, 337 S.W.2d 72, 76 (Mo. 1960). The issue is moot, and point I is denied.

## II

As point II, the Public Counsel claims that the Commission erred in granting MPS authority to defer the expense of rebuilding a portion of the Sibley plant and converting to low-sulfur western coal by recording the expenses in Account No. 186, Uniform System of Accounts, because, he claims, the expenses are not unusual or extraordinary expenses includable in Account No. 186 and must be recorded in another account. Account No. 186 records unusual or extraordinary expenses not included in other accounts. Thus, the Commission, by authorizing MPS to record the carrying costs and the depreciation expenses of the two construction projects at the Sibley generating station in Account No. 186, found the sums expended on the two projects to be unusual and extraordinary expenses not included in other accounts. Recording carrying costs and depreciation expenses in Account No. 186 defers these amounts to MPS's next rate case following the date the newly-constructed facilities are placed in service. Accounting rule No. 186 is as follows:

Account No. 186 Miscellaneous Deferred Debits

A. For major utilities, this account shall include all debits not elsewhere provided for, such as *miscellaneous work in progress, and unusual or extraordi-*

*nary expenses, not included in other accounts,* which are in the process of amortization and items the proper final disposition of which is uncertain.

(emphasis added).

The Uniform System of Accounts defines "extraordinary items" as

[t]hose items related to the effects of events and transactions which have occurred during the current period and which are not typical or customary business activities of the company.... Accordingly, they will be events and transactions of significant effect which would not be expected to recur frequently and which would not be considered as recurring factors in any evaluation of the ordinary operating processes of business.... To be considered as extraordinary under the above guidelines, an item should be more than approximately 5 percent of income, computed before extraordinary items. Commission approval must be obtained to treat an item of less than 5 percent, as extraordinary.

■■■ Appellate courts review the decision of the Commission, not the judgment of the circuit court, in matters emanating from the Commission and within its authority. *State ex rel. City of St. Joseph v. Public Serv. Comm'n*, 713 S.W.2d 593, 595 (Mo.App.1986). Reviewing courts examine the Commission's order to determine if it is lawful and reasonable. *State ex rel. City of West Plains v. Public Serv. Comm'n*, 310 S.W.2d 925, 933 (Mo. banc 1958). If a reviewing court finds the Commission's order to be both reasonable and lawful, it must affirm the order. *Empire Dist. Elec. Co. v. Cox*, 588 S.W.2d 263, 264 (Mo.App. 1979). The party contesting the order of the Commission bears the burden of proving that the order is unreasonable and unlawful. *Id.*

■■■ When determining the reasonableness of the Commission's order, the reviewing court determines whether the decision is supported by competent and substantial evidence on the whole record, whether the decision was arbitrary, capricious, or unreasonable, or whether the

Commission abused its discretion. *State ex rel. Chicago, Rock Island & Pac. R.R. v. Public Serv. Comm'n*, 312 S.W.2d 791, 794–95 (Mo. banc 1958); *State ex rel. Utility Consumers Council of Missouri, Inc. v. Public Serv. Comm'n*, 606 S.W.2d 222, 223 (Mo.App.1980), *cert. denied*, 450 U.S. 1042, 101 S.Ct. 1761, 68 L.Ed.2d 240 (1981). If the Commission's order is supported by competent and substantial evidence on the whole record, the order is reasonable. *State ex rel. Chicago, Rock Island & Pacific R.R.*, 312 S.W.2d at 794–95. "Substantial evidence" means evidence " 'which, if true' has 'probative force upon the issues' and 'implies and comprehends competent, not incompetent evidence.' " *State ex rel. Marco Sales, Inc. v. Public Serv. Comm'n*, 685 S.W.2d 216, 218 (Mo.App. 1984) (quoting *State ex rel. Rice v. Public Serv. Comm'n*, 359 Mo. 109, 114, 220 S.W.2d 61, 64 (Mo. banc 1949)). The reviewing court will not weigh the evidence heard by the Commission because the Commission is a fact-finding agency. *State ex rel. Inman Freight Sys., Inc. v. Public Serv. Comm'n*, 600 S.W.2d 650, 654 (Mo. App.1980).

■ The Commission's decision is lawful if there is substantial authority for its issuance. *State ex rel. Beaufort Transfer Co. v. Clark*, 504 S.W.2d 216, 217 (Mo.App. 1973). The Commission's order is presumptively valid, and the burden is on those attacking it to prove its invalidity. *State ex rel. Utility Consumers' Council of Missouri, Inc. v. Public Service Comm'n*, 585 S.W.2d 41, 47 (Mo. banc 1979).

■ The Commission's decision to grant authority to defer the costs associated with the Sibley reconstruction and coal conversion projects by recording the costs in Account No. 186 was the result of the Commission's determination that the construction projects were unusual and nonrecurring, and therefore, extraordinary. The Commission determined the projects to be unusual because of their size and substantial cost. The Commission expressed that deferral of costs just to support the current financial status distorts the balancing pro-

cess utilized by the Commission to establish just and reasonable rates. Because rates are set to recover continuing operating expenses plus a reasonable return on investment, only an extraordinary event should be permitted to adjust the balance to permit costs to be deferred for consideration in a later period.

MPS expended substantial sums on the Sibley reconstruction project. It expended $56,936,977 through May, 1991. MPS had been allowed to recover $54.7 million of the reconstruction project cost in rates in another related case. MPS sought deferral of approximately $14 million in costs related to the Sibley reconstruction project in 1992. MPS estimated the carrying costs and depreciation of the project would be $2,046,147 in 1992 and $2,006,000 in 1993. MPS sought to defer approximately twenty percent of the total project. The actual amount of the deferral was left to the anticipated August 1992 rate case.

The cost of the conversion of the plant to burn low-sulphur western coal to comply with the Clean Air Act was also substantial. The project cost $1,664,202 from 1989 through May of 1991. Additional costs associated with the conversion project were anticipated through 1993 to total approximately $39,000,000.[3] A portion of the cost of the coal conversion project, $925.787, was considered in another rate case. The Commission, as in the reconstruction projects, deferred determination of the actual amount of the deferred expenses to the anticipated rate case, and stated that it would not allow consideration of the deferred expenses in the ratemaking process unless a rate case were pending by December 31, 1992.

The projects for which the substantial funds were expended and for which deferral is sought were unusual and not recurring. Extending the life of the Sibley generating station plants by at least twenty years and converting of the station to burn low-sulphur coal in compliance with federal environmental law are extraordinary events. The Commission has authority to

---

3. MPS estimated completion of the western coal    conversion project to be April 1993.

grant deferral of amounts expended by MPS by authorizing that the sums be recorded in Account No. 186, and this authority is not contested. The contest disputes which of sections 393.140(4) and (8) applies, with the Public Counsel contending that section 393.140(8) applies and requires that the Commission conduct a public hearing. Because a hearing was conducted by the Commission and all the evidence which the Public Counsel desired to present for the Commission's consideration was presented, the requirements of both sections 393.-140(8) and (4) were satisfied and determination of which subsection applies is unnecessary in this case. The Commission has substantial authority for its decision to permit MPS to defer costs of the projects, and the decision of the Commission was supported by competent and substantial evidence on the record as a whole. Point II is denied.

## III

■ As his third point on appeal, the Public Counsel claims that the Commission's Report and Order constitutes single-issue rate making in violation of section 393.270, RSMo 1986. The Commission must consider all relevant factors, including all operating expenses and the utility's rate of return, when determining a rate authorization. *See State ex rel. Utility Consumers' Council,* 585 S.W.2d at 49. The Public Counsel claims that by allowing rate base treatment of the unamortized balance of Account No. 186, the Commission is permitting one factor to be considered to the exclusion of all other factors in determining whether a rate is to be increased. The Public Counsel argues that by granting MPS authority to defer certain costs of the two construction projects at the Sibley station, the Commission is permitting "MPS to isolate individual costs of service components for future ratemaking recovery by preserving these costs by means of deferral, without proper consideration of all concurrent relevant factors."

The Commission's Report and Order authorized MPS to record certain costs in Account No. 186 and, thereby, defer the amount. Additionally, the Commission's Order and Report limited the time to December 31, 1992, in which MPS could file a rate case in which the Commission would consider the expenses deferred as a factor in determining the appropriate rate. The Commission's Report and Order provided that if no rate case were filed by December 31, 1992, the Commission would assume that MPS was earning a reasonable return on its investment. The Commission authorized the deferral to begin January 1, 1992.

The Commission did not grant rate relief to MPS. The Commission determined only that the costs of the two construction projects were extraordinary and may be deferred. The Commission did not determine that the actual amount of the deferred costs would be recovered but stated in its Report and Order that the amount of the deferred cost to be recovered as well as other ratemaking issues would be determined in a later rate case.

The Commission stated at page 5 of its order

All other issues would still remain, including, but not limited to, the prudency of any expenditures, the amount of recovery, if any, whether carrying costs should be recovered, and if there are any offsets to recovery.

The Commission also stated

The deferrals are ... not single-issue ratemaking since only deferral is being allowed and if recovery is approved, rates are not based just on the deferred costs. The deferred costs will be considered with all relevant factors during the test year in which rates are set. By deferring the costs the Commission is allowing MPS to argue in the next rate case that those costs should be included since they are not ordinary and recurring expenses and therefore they fall outside the normal ratemaking formula. Bringing the costs forward for review in a rate case allows the Commission the opportunity to determine whether they should be included in MPS's revenue requirement calculation.

■ No Missouri court decisions exist determining whether deferring extraordi-

nary expenses to Account No. 168 constitutes single-issue ratemaking. However, the Illinois Court of Appeals has considered this issue. In *Business & Professional People for the Pub. Interest v. Illinois Commerce Comm'n*, 205 Ill.App.3d 891, 150 Ill.Dec. 750, 563 N.E.2d 877 (1990), the court considered whether the order of the Illinois Commerce Commission (ICC) which granted Commonwealth Edison Company, an electrical power producing company, authority to adjust accounting procedures of financing costs and to defer depreciation at its nuclear power plant constituted illegal single-issue and retroactive ratemaking. *Id.* 150 Ill.Dec. at 753–54, 563 N.E.2d at 880–81. The court concluded that the ICC order affected account procedures, was not a ratemaking decision, and was legal. *Id.* 150 Ill.Dec. at 754, 563 N.E.2d at 881. The court recognized that the order did not foreclose any discussion or presentation of evidence that would normally occur when the ICC conducts the ratemaking hearing for the nuclear power plant. *Id.*

In *Business & Professional People for the Pub. Interest v. Illinois Commerce Comm'n*, 146 Ill.2d 175, 166 Ill.Dec. 10, 585 N.E.2d 1032 (1991), the Illinois Supreme Court considered the appeal of intervenors from rate orders of the Illinois Commerce Commission in an electric utility rate-making proceeding. The rate orders pertained to the costs of a Commonwealth Edison Company's nuclear power plant and a corresponding increase in rates. One of the issues presented to the court concerned allegations of single-issue ratemaking. *Id.* 166 Ill.Dec. at 39–41, 585 N.E.2d at 1061–1063. The intervenors argued that allowing recovery of deferred charges constituted single-issue ratemaking because deferred charges measure only selected elements of the revenue formula. *Id.* 166 Ill.Dec. at 40, 585 N.E.2d at 1062. The court agreed that recovery of the total amount of the deferred charges constitutes proscribed single-issue ratemaking, but the court noted that this conclusion addressed the amount of recovery and not whether recovery of deferred charges is permissible. *Id.* Referring to *Business & Professional People*, 150 Ill.Dec. at 754, 563

N.E.2d at 881, the court observed a fundamental difference between a decision to *record* deferred charges and a decision to *recover* deferred charges. *Id.* 166 Ill.Dec. at 40, 585 N.E.2d at 1062. The court, thus, recognized a "fundamental difference between a rate case and a case involving only accounting procedures." *Id.* The court stated that the utility is not automatically entitled to recovery of the full amount of the deferred charges. *Id.* 166 Ill.Dec. at 40–41, 585 N.E.2d at 1062–63.

The rationale applied in both of the Illinois cases is applicable in this case. The Commission authorized MPS to defer certain costs by recording them in Account No. 186. The Commission's order did not presume to determine a new rate but effectively permitted MPS the option to file a rate case by December 31, 1992, and then to present evidence and argue that the deferred costs recorded in Account No. 186 should be considered by the Commission in approving a rate change. The Commission's order does not preclude consideration of other relevant factors when the Commission considers the appropriate rate to be charged the utility's customers. The Commission's order authorizing MPS to defer costs of the Sibley revitalization and low-sulphur coal burning projects by recording them in Account No. 186 does not constitute single-issue rate making.

Intervenor-respondent MPS also contends that the Public Counsel is collaterally estopped from contesting that the Commission's accounting authority order is single-issue ratemaking. MPS claims that the Commission's earlier decision which authorized MPS to defer to Account No. 186 depreciation expense, property taxes, and carrying costs associated with the Sibley rebuild and western coal conversion projects "fully litigated" the issue because the Public Counsel was a party to that proceeding and challenged the lawfulness and reasonableness of the deferral. The Commission's decision in the prior related case was not appealed by the Public Counsel. Whether the doctrine of collateral estoppel applies to preclude the Public Counsel from asserting the single-issue ratemaking issue

in this case is not addressed. Point III is denied.

The Report and Order of the Public Service Commission is affirmed.

All concur.