STATE of Missouri, ex rel. MID–MISSOURI TELEPHONE COMPANY, Chariton Valley Telephone Corporation, Wheeling Telephone Company, Mokan Dial, Inc., Green Hills Telephone Company, Northeast Missouri Rural Telephone Company, Choctaw Telephone Company, and KLM Telephone Company, Appellants,

v.

The PUBLIC SERVICE COMMISSION OF MISSOURI and Office of the Public Counsel, Respondents,

and

Alltel Missouri, Inc., Southwestern Bell Telephone Company, GTE North Inc., Contel of Missouri, Inc., Contel System of Missouri, Kansas State Telephone Company d/b/a Contel of Eastern Missouri, Citizens Telephone Company, Fidelity Telephone Company, United Telephone Company of Missouri, Cybertel Cellular Telephone Company, Competitive Telecommunications Association of Missouri, MCI Telecommunications Corporation, AT & T Telecommunications of the Southwest, Inc., and Cities of Oak Grove, Independence, Excelsior Springs, Platte City, Ozark and the County of Jackson, Intervenors.

No. WD 46355.

Missouri Court of Appeals, Western District.

Oct. 19, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 30, 1993.

Application to Transfer Denied Jan. 25, 1994.

Craig Steven Johnson, Jefferson City, for appellants.

Randy Bakewell, Asst. Public Counsel, Office of Public Counsel, Robert J. Hack, Deputy Gen. Counsel, Public Service Com'n, Jefferson City, for respondents.

W.R. England, Sondra B. Morgan, Jefferson City, for Citizens Telephone Co., GTE North Inc., Contel of MO, Inc., Contel System of MO, Inc., Kansas State Telephone Co. d/b/a Contel of Eastern MO, and Fidelity Telephone Co.

H. Edward Skinner, Little Rock, AR, for Alltel MO, Inc.

Katherine C. Swaller, St. Louis, for Southwestern Bell Telephone Co.

Thomas Grimaldi, Overland Park, for United Telephone Co. of MO.

Richard S. Brownlee, III, Jefferson City, for Cybertel Cellular Telephone Co., Competitive Telecommunications Ass'n of MO.

Carl Lumley, Clayton, for MCI Telecommunications Corp.

Paul DeFord, Kansas City, for AT & T Telecommunications of Southwest, Inc.

Jeremiah D. Finnegan, Kansas City, for Cities of Oakgrove, Independence, Excelsior Springs, Platte City, Ozark, and County of Jackson.

Before KENNEDY, P.J., and BERREY and SPINDEN, JJ.

SPINDEN, Judge.

Appellants are eight telephone companies which appeal several orders by the Public Service Commission (PSC) establishing a new policy for the way appellants can charge for telephone calls between telephone exchanges. The companies are Mid–Missouri Telephone Company, Chariton Valley Telephone Corporation, Wheeling Telephone Company, MoKan Dial, Inc., Green Hills Telephone Company, Northeast Missouri Rural Telephone Company, Choctaw Telephone Company, and KLM Telephone Company. Each provides local exchange telephone service within its assigned exchange and is referred to in the industry as a local exchange company (LEC).

Appellants serve approximately 70 Missouri exchanges. They challenge PSC orders creating and directing all Missouri telephone companies to provide "community optional service" (COS) in exchanges meeting criteria set out in PSC orders.

## BACKGROUND FACTS

This appeal involves telephone calls between exchanges, which are typically toll calls billed by the minute. Under the toll system, five carriers—Southwestern Bell, United Telephone of Missouri, Contel, GTE and Fidelity—provide toll service. The LEC where the call originated charges its customer for the toll call and pays the toll carrier.

The toll carriers pay LECs access payments for this service.

COS' purpose is to allow unlimited calling between two exchanges for a flat monthly rate rather than a per-minute toll. In those areas where PSC ordered implementation of COS, LECs lost the access payments they had received under the toll system.

PSC began investigating COS after receiving numerous complaints about large telephone bills resulting from calls between neighboring telephone exchanges. Initially, the PSC established extended area service (EAS), but it did not resolve the problem. On March 20, 1987, in case TO–86–8,[1] the PSC rescinded EAS and implemented extended measured service (EMS) on a limited, experimental basis. It assigned a docket number, TO–87–131, to the experiment. It made all 44 Missouri LECs parties to the case, and conducted an evidentiary hearing in September 1989.

PSC issued a decision, denominated a report and order, in case TO–87–131 on December 29, 1989, permanently establishing COS. PSC ordered all LECs to make COS available to customers in any exchange where EMS had been implemented and in other exchanges meeting certain criteria. The report and order mandated the options to be offered and the rates to be charged. PSC did not set a plan for the companies to divide COS proceeds. It directed the phone companies to suggest an intercompany compensation plan which would ensure that no phone company profited from COS at the expense of other companies.[2] PSC ordered any company which believed that it would suffer permanent losses from COS to file a tariff increasing rates for selected services. The report and order also said that PSC would promulgate a rule to implement the decisions announced in the report and order. PSC has not done this.[3]

---

1. Although using PSC's docket numbers to track the myriad of activity in this case is confusing, we can discern no better system. We understand that PSC assigns these docket numbers to its contested cases.

2. The parties use the euphemism "maintaining revenue neutrality" to refer to this.

3. Appellants do not question the validity of creating COS by adjudication rather than by rulemaking in apparent violation of §§ 536.021.1 and 386.250(6), RSMo Supp.1992. Appellants raised the issue before the circuit court, see Petition for Writ of Review, Declaratory Judgment, and Application for Stay, Count I, ¶ 28.K, but they did not raise the issue on appeal. Appellants do, in

Three phone companies—United, Contel, and Southwestern Bell—filed applications for a rehearing. PSC denied the applications, and the companies appealed to circuit court. The circuit court ruled on April 27, 1990, that, insofar as COS reduced existing rates and revenues of LECs involved in providing COS, the report and order was an unlawful taking of revenues in violation of U.S. CONST. amend. XIV and MO. CONST. art. I, § 10 (1945). The court's order stated:

> THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that that part of the Commission's Report and Order in Case No. TO–87–131, which reduces the existing rates and revenues of LECs involved in providing COS without taking any evidence or making any finding that the rates and revenues of the affected LECs are unlawful or otherwise unreasonable or, in lieu thereof, without maintaining revenue neutrality for those LECs is reversed and remanded to the Commission for further action consistent herewith. In all other respects, the Commission's Report and Order is hereby affirmed.

The three companies did not appeal this ruling.

In the meantime, on March 9, 1990, PSC closed case TO–87–131 and opened TO–90–232 to address any outstanding issues regarding COS, including revenue neutrality increases for LECs experiencing shortfalls. On April 18, 1990, PSC issued a report and order adopting a revenue sharing plan for intercompany compensation. The plan called for companies participating in a COS to share COS revenues equally. If one company gained, the plan provided for the gain to be paid to other LECs participating in that route to the extent that the other companies had losses.

PSC approved various tariffs filed by LECs for implementing the initial COS routes and revenue recovery tariffs filed by various LECs to maintain revenue neutrality. PSC rejected Chariton Valley's proposed tariffs because they included the details of reve-nue sharing. Chariton Valley filed applications for rehearing, which PSC denied, but it did not petition the circuit court for review. Chariton Valley refiled the tariffs to satisfy PSC's objections. PSC assigned case number TR–91–9 to these tariffs.

In August 1990, appellants Mid–Missouri, Choctaw, Wheeling, MoKan Dial, Green Hills, KLM and Northeast filed COS tariffs which also included descriptions of an intercompany compensation plan. PSC assigned case number TR–91–134 to these tariffs.

PSC temporarily suspended implementing COS while it decided how to provide for two-way COS where calls could originate in either exchange of a COS. PSC issued a report and order on October 31, 1990, adopting billing service adjustments for two-way COS. On November 30, 1990, PSC issued an order in TO–90–232 modifying the revenue sharing plan and setting a timetable for implementing outstanding COS routes.

On December 11, 1990, PSC issued an order in TO–90–232 adding three routes—TO–90–239, TO–90–245 and TO–90–248—to the schedule of COS routes to be implemented pending the termination of proceedings involving the intercompany compensation tariffs of TR–91–9 and TR–91–134. Mid–Missouri was involved in all three routes. Mid–Missouri applied for a rehearing of the December 11 order, and PSC denied it. PSC ordered that the three routes be implemented by May 10, 1991.

PSC issued a report and order in cases TR–91–9 and TR–91–134 on April 26, 1991, ruling that LECs did not need to include revenue sharing plans in their tariffs because intercompany compensation did not affect the rate customers paid for service. PSC decided that contracts between the carriers involving a COS was the appropriate place for such plans.

PSC ordered Mid–Missouri to implement COS on or before June 20, 1991. Mid–Missouri applied for a rehearing of this order, and, on May 22, 1991, PSC denied it. The

---

their reply brief, question PSC's statutory authority to create COS, but this is a different issue, and, in any case, we decline to address any issues not properly presented to the circuit court

or in the initial brief on appeal. *Hough v. Jay-Dee Realty and Inves. Corp.,* 401 S.W.2d 545 (Mo.App.1966).

appellants filed applications for a rehearing in cases TR–91–9 and TR–91–134, and PSC denied them. The appellants filed a petition for review in the circuit court on May 29, 1991.

On July 17, 1991, PSC issued a report and order in case TR–91–86 approving tariffs proposed by Choctaw for revenue recovery from a COS between Halltown and Springfield. Choctaw filed a motion for rehearing and clarification on July 25, 1991, and PSC denied it on August 2, 1991.

On July 17, 1991, the PSC issued a report and order in case TR–91–87 disapproving MoKan's proposal for a COS additive as a method of revenue recovery. PSC also held that the proposed tariffs were excessive. PSC stayed MoKan's providing COS until further order. MoKan filed a motion for clarification and rehearing on July 25, and PSC denied it on August 2. MoKan and Choctaw filed a joint petition for review in circuit court on August 19, 1991.

The circuit court consolidated the petitions for review and considered cases TO–86–8, TO–87–131, TO–90–232, TR–91–9, TR–91–134, TR–91–87, TR–91–86, TO–90–239, TO–90–245, and TO–90–248. On May 6, 1992, the circuit court ruled, among other things, that because the relators had not filed applications for rehearing within the prescribed time limits of § 386.500.2,[4] it would not consider the merits of case TO–87–131 to create COS; the decision of April 18, 1990, in case TO–90–232, to adopt a revenue sharing plan for intercompany compensation; the decision of October 30, 1990, in case TO–90–232, concerning billing service adjustments; and the decision of November 30, 1990, in case TO–90–232, modifying the revenue sharing plans and setting a timetable for implementing COS.

On the basis of § 386.510, the court also decided that it did not have jurisdiction to review all of the decisions because the petitioners had not filed a petition for review within 30° days after their applications for rehearing had been denied. It made this ruling concerning the decision in TO–86–8 on March 20, 1987, to establish EMS; the decision in TO–87–131 on December 29, 1989, to create COS; the decision in TO–90–232 on March 9, 1990, to reopen the COS matter to address any remaining issues; PSC's order of May 4, 1990, approving tariffs by various LECs for implementing COS and rejecting Chariton Valley's tariffs because they contained a revenue sharing plan; and PSC's order in TO–90–232 on December 11, 1990, to deny a rehearing of Mid–Missouri's implementing additional COS routes. The court held that these decisions were final and not susceptible to collateral attack.

The court further rejected the petitioners' contention that the issues decided in TO–86–8, TO–87–131, TO–90–232, TO–90–239, TO–90–245 and TO–90–248 were appealable under *State ex rel. Fischer v. Public Service Commission,* 670 S.W.2d 24 (Mo.App.1984). The *Fischer* court held that an interim rate case is ancillary to, and dependent upon, a permanent rate case. The circuit court ruled that its judgment of April 27, 1990, bound the court and the parties as to the lawfulness of the PSC's actions in TO–87–131. As to the question of whether PSC was abiding by the circuit court's previous decision, the court held that by allowing LECs to maintain revenue neutrality concurrently with COS implementation, PSC was complying with the law.

The court found that PSC's decisions were based upon substantial and competent evidence on the record as a whole. Finally, the court held that PSC did not err in refusing to allow the revenue sharing plan to be included in the tariffs of the LECs. This appeal followed the circuit court's decision.

### POINTS ON APPEAL

In their three points on appeal, appellants collaterally attack the lawfulness of PSC's orders. In Point I, they argue that the orders constituted an unconstitutional taking. In Point II, they contend that PSC's orders "did not allege, find, or contain evidence that any of appellants' existing rates, services, or revenues are excessive, unreasonable or unlawful, and also failed to consider any relevant financial factors." In Point III, the appellants contended that PSC acted unlaw-

4. All statutory references are to RSMo 1986 un-  less otherwise indicated.

fully in refusing tariffing of revenue sharing plan of intercompany compensation. We do not consider the merits of appellants' points because of the mandate of § 386.550.

 Section 386.550 says, "In all collateral actions or proceedings the orders and decisions of the commission which have become final shall be conclusive." If a statutory review of a PSC order is unsuccessful, the order is final and cannot be attacked in a collateral proceeding. *State of Missouri ex rel. Licata, Inc. v. Public Service Commission of the State of Missouri*, 829 S.W.2d 515 (Mo.App.1992).

■ The circuit court concluded that the appellants waived any objection by not following the correct procedures for challenging a PSC decision. PSC created COS in its report and order of December 12, 1989. It adopted the revenue sharing plan in its report and order of April 18, 1990. None of the appellants filed a motion for rehearing under § 386.500.1. Section 386.500.2 says:

> No cause of action arising out of any order or decision of the commission shall accrue in any court to any corporation ... unless that party shall have made, before the effective date of such order or decision, application to the commission for a rehearing.... The applicant shall not in any court urge or rely on any ground not so set forth in its application for rehearing.

We agree with the circuit court. Appellants were parties to the cases. They had the right to ask for a rehearing, and because they did not do so, they lost the right to attack the decisions collaterally.

Appellants argue that PSC's orders in TO–87–131 and TO–90–232 were ancillary to the orders which appellants appealed, so we are not precluded from reviewing the earlier orders. In *Fischer*, 670 S.W.2d at 24, this court held that the public counsel was not precluded from seeking review of a permanent rate increase by failing to seek review of an interim rate request. The court based its decision on the absence of express statutory authority for an interim rate request. "It is clear that the request for an interim rate increase did not stand on its own as an entirely separate and distinct proceeding." *Id.* at 27.

This case is not analogous to *Fischer*. The orders in TO–87–131 and TO–90–232 are not ancillary to the subsequent orders. PSC created COS in TO–87–131; it adopted intercompany compensations plans in TO–90–232. Both orders were final and not dependent on any further action. They stood on their own, and any company which wished to appeal had no reason to wait for further PSC action. Because appellants are collaterally attacking PSC's orders contrary to § 386.550, we do not consider the merits of their points in this appeal. We affirm the decisions of the PSC.

All concur.