**MISSOURI GAS ENERGY, a Division of Southern Union Company, Appellant,**

v.

**PUBLIC SERVICE COMMISSION STATE OF MO et al, Respondent.**

No. WD 54710.

Missouri Court of Appeals, Western District.

Aug. 18, 1998.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 22, 1998.

Application for Transfer Denied Nov. 24, 1998.

W. Stanley Walsh, St. Louis, Gary W. Duffy, Jefferson City, for Appellant.

Roger W. Steiner, Thomas R. Schwarz, Jr., Douglas E. Micheel, Jefferson City, Stuart W. Conrad, Kansas City, for Respondent.

Before ELLIS, LOWENSTEIN and RIEDERER, JJ.

LOWENSTEIN, Judge.

This is an appeal from a final order of the Public Service Commission ("PSC" or "Commission"). The appellant is Missouri Gas Energy ("MGE"). MGE is a subsidiary of Southern Union Company. MGE operates to supply, at the retail level, natural gas in western Missouri. The appellant's business, formerly known as the Gas Service Company, was acquired by KP Western in the early 1990's, and operated as KP Western until

1994 when Southern Union bought the business and established what is now known as MGE. This case emanates from a series of Gas Line Safety Rules ("Rules") promulgated by the PSC in 1989 in response to federal legislation. As the name implies, the Rules required gas utilities to substantially replace all of their older service lines and mains. The effect of this requirement was to cause MGE's predecessor and MGE to incur a new and substantial expense not envisioned by them or accounted for in the then current rates as previously approved by the Commission. During the time that a service or main line construction project is in progress, the utility is allowed to "book a deferred amount," known as the Allowance for Funds Used During Construction ("AFUDC"), which allows the utility to compensate for the financing costs of the project.

When the project is finished, this new figure is an asset of the utility and is eligible to be placed in its rate base, to be depreciated, for the purpose of figuring a rate of return based on this new substantial asset. The temporary problem created is the accounting treatment of the new asset until a new rate, after a hearing and subsequent order by PSC, goes into effect. The Commission has the regulatory authority to grant a form of relief to the utility in the form of an accounting technique, an Accounting Authority Order, (hereinafter called an "AAO") which allows the utility to defer and capitalize certain expenses until the time it files its next rate case. The AAO technique protects the utility from earnings shortfalls and softens the blow which results from extraordinary construction programs. However, AAOs are not a guarantee of an ultimate recovery of a certain amount by the utility.

In this case there was a substantial time lag following construction. Also complicating matters, the utility underwent changes in ownership during this period, and as part of gaining approval of the transfers, the new owners agreed to put off any rate request. During this period the PSC granted two AAOs authorizing a 10.54% rate of return for MGE. When MGE's 1996 rate request was made, the PSC only allowed MGE a rate of return of 4% for 1994 and 6% for 1995 and

1996 on its carrying costs. These figures, which according to PSC equate to MGE's AFUDC rates, will allow less recovery than MGE anticipated.

The long and short of the points raised by MGE is that the treatment afforded it in the two AAOs approved by the Commission was neither made permanent nor incorporated in the same percentages in the ultimate rates approved by the Commission for MGE. It argues that the resulting loss is unfair. The respondent PSC and the intervenor respondent Public Counsel, assert there is no guarantee to a utility in the grant of an AAO that the later rate case will contain the same figures. The circuit court affirmed the action of the Commission, and this appeal followed.

 The order of the Public Service Commission has a presumption of validity—the burden is on the appellant to prove invalidity. *State ex. rel. Mobile Home Estates, Inc. v. Public Service Com'n,* 921 S.W.2d 5, 9 (Mo.App.1996). Judicial review is to determine lawfulness of the order under the statutes, as well as reasonableness of the order and whether it is supported by competent and substantial evidence on the whole record. *State ex. rel. Utility Consumers' Council of Missouri, Inc. v. Public Service Com'n,* 585 S.W.2d 41, 47 (Mo. banc 1979).

MGE raises seven points in this appeal, some of which are overlapping, but all decry the fact that the degree of relief from the mandated safety expense afforded MGE by the Commission via the AAOs was not reflected in the results of the later rate application. Before entering a discussion of the points, it is helpful to first examine the leading case on Accounting Orders and the effect of AAOs on later rate applications to the PSC.

In *State ex. rel. Office of the Public Counsel v. Public Service Com'n of Missouri,* 858 S.W.2d 806 (Mo.App.1993), an electric utility sought, and was granted, an accounting authority order to defer depreciation expenses and carrying costs of two of its expensive construction projects. One project would greatly extend the life of a generating site and the other would convert the coal generating station for use of a low-sulfur coal to

come into compliance with the Clean Air Act. The PSC, under its statutory authority, adopted an AAO which allowed the utility to defer and record depreciation expenses and carrying costs until subsequent years. *Id.* at 808 and 811–12. This court upheld the authority of the PSC, as granted by § 393.140, RSMo.1986, to hear an application by a utility and grant to a utility the permission to defer extraordinary expenses from one period to another. The PSC's decision to defer until the rate case, was affirmed by this court on the basis that the costs were both substantial and unusual. *Id.* at 811. This court specifically stated that by allowing a deferral under an AAO, the PSC was not granting "rate relief" to the utility, and was not determining the "actual amount of the deferred costs" that would be recovered. Instead, the rate decision would "be determined in a later rate case," which the PSC ordered to be filed by the end of the calendar year. *Id.* at 812. As is applicable to the case at bar, the opinion stated that the AAO, "did not presume to determine a new rate but effectively permitted" the utility to file a rate case by the end of the year, "and then to present evidence and argue that the deferred costs recorded … should be considered by the Commission in approving a rate change." *Id.* at 813. The court reiterated the holding that nothing in the AAO order served to automatically entitle the utility to recover in the subsequent rate case the full amount of the deferred charges allowed by the previous AAO. *Id.*

The relevant events in the case at bar are as follows: (1) in 1989 the PSC granted MGE's predecessor, KP Western, an AAO which authorized a carrying cost rate of 10.96%; (2) in a 1991 rate case the PSC lowered the figure to 10.54%; (3) in 1992 a second AAO was granted which purported to keep the same figure until the next rate case which came in 1993; (4) the 1993 rate case, which was approved by the PSC in 1994, was concluded in a "negotiated settlement" since ownership of this utility was being changed from KP Western to Southern Union; in early 1994 KP Western applied for a third AAO, which was ultimately approved with the 10.54% figure; (5) in 1996 MGE filed the rate case now under review, and the PSC lowered the rate of return to 4% for 1994 and 6% for 1995 and 1996. Again, as stated earlier, MGE's points on appeal contain the central theme that the earlier, higher rate of return was required to be included in the 1997 rate award because of its use in the preceding AAOs. A summary of the points is now set out:

Points I–IV covers matters that would call for reversal and our entering the 10.54% rate.

I The Commission's determination of a carrying cost rate of 10.54% in the earlier Accounting Order was a final order that was binding on the Commission in this action.

II The Commission was "contractually bound" to its prior Order of 10.54%.

III The Commission was "equitably estopped" from reducing the 10.54% Order.

IV The Commission violated the Missouri Constitution, Art. I Section 13, by changing the Accounting Order of 10.54%, which had become vested.

MGE asserts Points V–VII relate to evidentiary matters and would call for a reversal and new hearing.

V The PSC's Order was not explicit in stating why or which staff proposal it was adopting, the staff having proposed three alternatives, the 4% or 6% short term rate, the 10.54% AFUDC rate and the 9.46% rate of return on invested capital.

VI Insufficient competent or substantial evidence in the record to support the PSC's conclusion that the 4% or 6% short term rate was more reflective of MGE's carrying costs than the—10.54% rate approved in the 1994 AAO.

VII The Commission was arbitrary in using the 4% or 6% rate as those figures represented solely its short term cost, and the rule is that short term costs are to be weighted with long term cost (9.46% was an alternative staff proposal on return of long term capital and equity for test year ), and the short term costs amounted to less than ten percent of total capital investment.

## I.

■ This point asserts the 1994 AAO was a final order adopting the 10.54% figure, and that § 386.550 invokes the doctrine of collateral estoppel, since the new figures of 4% and 6%, are a collateral attack on the prior final amount. It is true no one appealed the 1994 AAO. However, it does not follow that the 10.54% figure was then required in this cause, a subsequent rate case. In the Public Counsel case, the court made it clear that AAOs are not the same as ratemaking decisions, and that AAOs create no expectation that deferral terms within them will be incorporated or followed in rate application proceedings. *Public Counsel,* 858 S.W.2d at 813. The whole idea of AAOs is to defer a final decision on current extraordinary costs until a rate case is in order. At the rate case, the utility is allowed to make a case that the deferred costs should be included, but again there is no authority for the proposition put forth here that the PSC is bound by the AAO terms. *Id.* In fact, the following language in the 1994 AAO provides the appropriate caveat:

3. That nothing in this order shall be considered a finding of the Commission of the reasonableness of the expenditures involved herein, or of the value for ratemaking purposes of the expenditures and property herein involved, or as an acquiescence in the value placed on those expenditures and property by Missouri Gas Energy, and the Commission reserves the right to consider the ratemaking treatment to be afforded these expenditures in any later proceeding.

The AAOs were not final and were indeed dependent on the further action of a ratemaking case, so they could not be determinative, and could not make this action a collateral proceeding to attack those final actions. *cf. State ex. rel. Mid–Missouri Telephone Co. v. Public Service Com'n of Missouri,* 867 S.W.2d 561, 565 (Mo.App.1993).

## II.

■ This point presents the assertion of there being "... no doubt that an agreement like the Settlement Agreement in this case would be considered a binding and enforceable contract if the only parties to it had been private entities." The reader is reminded that the agreement referred to was more than just a continuation of the AAO, but also dealt with the additional issue of the transfer of assets and ownership of the utility from KP Western to MGE. The agreement merely allowed MGE to continue to use the 10.54% figure allowed in KP Western's AAO. Section 393.190, RSMo.1994, simply requires the PSC to approve transfers. There is nothing in the statutes or in the case law implying that this approval somehow requires that the regulatory body must accept any or all figures into later rate requests. MGE's reliance on *United States v. Winstar Corp.,* 518 U.S. 839, 116 S.Ct. 2432, 135 L.Ed.2d 964 (1996), is misplaced. In *Winstar,* the federal government, in response to legislation to encourage the purchase of failing thrift institutions, had made such bailouts more attractive by promising preferential accounting procedures where a solvent institution merged with a failing one. A change in the regulatory policy after a failed thrift had been acquired, would have rendered the solvent purchaser immediately insolvent if the change were upheld. 116 S.Ct at 2449. The court did not allow the government to change positions and penalize the purchaser. In the case at bar, the PSC made no binding promises in approving the voluntary transfer presented to it.

Even if the facts here elevated the actions of the PSC to invoking contract obligations, the appellant can point to no language in the Agreement to Transfer Assets that would support the result it wishes to obtain. The agreement was for transfer of ownership of the utility. The utility agreed to not file for a rate increase for three years, and the PSC staff agreed to continue to support the continued deferral of costs pursuant to AAOs. As in point I, the language in *Office of Public Counsel,* 858 S.W.2d at 812—13, makes it clear that the PSC is not engaged in ratemaking when it approves an AAO.

## III.

■ MGE next relies on the doctrine of equitable estoppel for a continuation of the

10.54% figure in the rate request under review. Appellant asserts that the 1993 settlement, coupled with the 1994 AAO, bring this doctrine into play. The elements of equitable estoppel, recently set out in *Coastal Mart, Inc., v. Department of Natural Resources*, 933 S.W.2d 947, 956 n. 5 (Mo.App. 1996), are:

> 1) a statement or act by the government entity inconsistent with the subsequent government act; 2) the citizen relied on the act; and 3) injury to the citizen. In addition, the governmental conduct complained of must amount to affirmative misconduct.

This doctrine is not ordinarily applicable to the government. *Murrell v. Wolff*, 408 S.W.2d 842, 851 (Mo.1966). Equitable estoppel may run against the state, but only where there are exceptional circumstances and a manifest injustice will result. *Prince v. Division of Family Services*, 886 S.W.2d 68, 73 (Mo.App.1994). Equitable estoppel is not applicable if it will interfere with the proper discharge of governmental duties, curtail the exercise of the state's police power or thwart public policy, and is limited to those situations where public rights have to yield when private parties have greater equitable rights. *State ex. rel. Capital City Water Co. v. Missouri Public Service Com'n*, 850 S.W.2d 903, 910 (Mo.App.1993). The setting and regulation of utility rates by the PSC is a duty of state government.

In this case, counsel for MGE was candid in stating at oral argument that it was doubtful the doctrine applied. This court agrees.

### IV.

■■■■ Mo. Const. Art. I, § .13, prohibits the enactment of any law which is retrospective in its operation, and a retrospective law cannot be allowed to impair "some vested right or affects past transactions to the substantial prejudice of the parties." *M & P Enterprises, Inc. v. Transamerica Financial Services*, 944 S.W.2d 154, 160 (Mo. banc 1997). However, the AAO agreement of a 10.54% deferral did not, nor could not, translate into a binding expectation of such treatment when the rates of the utility were un-

der review. *Public Counsel*, 858 S.W.2d at 812—13.

### V.

■■■■ In its three remaining points, MGE seeks a new trial. All three deal with the PSC's use of 4% and 6% rates rather than the 10.54%. The points will be treated under this heading.

1. MGE asserts it is entitled to a determination of its actual costs relating to the pipeline safety costs. This request on review is premised on the argument that the PSC order in the rate case under review does not recite sufficient facts to support the conclusion of the lower rates of 4% and 6% found by the PSC. MGE's specific complaint here is that the staff made three recommendations to the PSC but that the Commission's Order is not specific as to which alternative it selected. In fact, the only alternate proposal made by the Staff was a rate of 9.46%, but the staff's proposal clearly ranked the 4% and 6% rates as the primary choice. MGE cites as authority *Friendship Village of South County v. Public Service Com'n*, 907 S.W.2d 339, (Mo.App. 1995), which stands for the general proposition that for a PSC award to be reasonable there must be sufficient findings stated within the PSC order to enable a meaningful and intelligent judicial review. This point is not well taken. From the PSC's written decision, the record is clear that the PSC adopted the staff's primary proposal to use the "Allowance for Funds Used During Construction" (AFUDC) to determine the carrying costs for the safety improvements, and those figures of 4% and 6% came out testimony.

2. This point asserts insufficient evidence to support the adoption of the lower rates. It states that Staff witness Harris merely suggested use of the AFUDC rate without supplying figures or percentages. As the respondents point out, the 4% figure for 1994 and 6% for 1995 and 1996 came from discovery obtained from MGE, and it was within the province of the Commission to determine the methodology for ratemak-

ing and the PSC was not bound to rely only on the testimony favorable to the utility. *State ex. rel. Associated Natural Gas Co. v. Public Service Com'n of Missouri*, 706 S.W.2d 870, 880 and 882 (Mo. App.1985).

3. The final argument seeks a new hearing because the ADUDC rates of 4% and 6% were arbitrary and capricious because those figures correlate to short term carrying cost rates and are not reflective of the true actual costs it bore. MGE alludes to the 9.46% alternative figure as being more reflective of its actual costs. The problem with this argument is that MGE only offered evidence to continue the 10.54% figure. The PSC was free to make a finding on the purely factual question of the carrying cost rate, and the court here may not substitute its judgment for that of the Commission. *State ex. rel. Office of the Public Counsel v. Public Service Com'n of Missouri*, 938 S.W.2d 339, 342 (Mo.App.1997). The PSC was free to accept the Harris testimony. The result is not arbitrary or capricious.

Although MGE states the obvious that it will not recoup all the money it thought it would, the AAO and other orders of the PSC left no doubt that the PSC was not bound to use the 10.54% figure in the rate case. The case law as set out in *Public Counsel*, 858 S.W.2d at 812—13, makes it clear a utility cannot expect the same result in its rate case as existed in previous AAOs. If the PSC's Order is based on competent and substantial evidence in the rate case, then it is to be affirmed by the courts.

The judgment affirming the Order of the PSC is affirmed.

All concur.