Justin COLLINS, Petitioner–Appellant,

v.

**MISSOURI DIRECTOR OF REVENUE, Respondent–Respondent.**

No. 22777.

Missouri Court of Appeals, Southern District, Division One.

Oct. 14, 1999.

---

John M. Albright, Moore & Walsh, Poplar Bluff, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen. and Evan J. Buchheim, Asst. Atty. Gen., Jefferson City, for Respondent.

KENNETH W. SHRUM, Judge.

Missouri's Director of Revenue (Director) suspended Justin Collins's driving privileges for driving with a blood alcohol concentration over 0.10% by weight. *See* § 302.505.1, RSMo Cum.Supp.1997. Collins filed for a trial de novo on this issue as authorized by § 302.535. After trial, the court entered a judgment affirming Director's suspension of Collins's license. Collins's appeal presents two issues:

1.  Did the trial court err in failing to invoke equitable estoppel principles or apply outrageous conduct theory as a basis for ordering reinstatement of Collins's license where a deputy sheriff, knowing that Collins had been drinking, ordered Collins to drive his vehicle from a fight scene, after which a highway patrolman stopped Collins in the belief he had been a participant in the fight?

2.  Did the trial court commit reversible error in admitting evidence of breathalyzer test results?

We answer, "No," to both questions. We affirm.

### APPLICABLE LAW

In pertinent part, § 302.505.1, RSMo Cum.Supp.1997 provides:

> "The department shall suspend or revoke the license of any person upon its determination that the person was arrested upon probable cause to believe such person was driving a motor vehicle while the alcohol concentration in the person's blood, breath, or urine was ten-hundredths of one percent or more by weight...."

■ Under § 302.505.1, Director must prove two elements by a preponderance of the evidence at a trial de novo. Specifically, Director must prove that "(1) the driver was arrested on probable cause that he or she was committing an alcohol-related driving offense, and (2) the driver had been driving at a time when his or her

blood alcohol concentration was at least .10 percent by weight." *House v. Director of Revenue*, 997 S.W.2d 135, 138 (Mo.App. 1999).

## DISCUSSION AND DECISION

*Point I: Equitable Estoppel or Outrageous Conduct Defenses*

Collins's first point maintains that the trial court erred in sustaining Director's suspension of his license because an "agent of the government," i.e., a deputy sheriff, ordered Collins to operate his pickup truck, "which action estops or constitutes such outrageous conduct as to prohibit . . . Director from suspending the license and the [t]rial [c]ourt should have ordered the suspension set aside." To understand this point requires a summary of the evidence regarding Collins's arrest and the events immediately prior thereto.

Around midnight on February 27, 1998, some of the patrons of the Sawdust Saloon, located in a "very rural area" of Butler County, got into a fight. Collins was inside the saloon when the fight began. Later, he went outside "to try to break it up" but denied he was ever "involved in the fight." Once outside, he saw four or five "different police cars," "several deputies," and one highway patrol car at the scene. Thereon, Collins got in his truck and drove off the parking lot onto a public road.

Highway patrolman Polodna, who was parked "by . . . the edge of the parking lot," followed Collins and stopped him. Collins admitted to Polodna that he had been drinking. Polodna had Collins perform several field sobriety tests, most of which Collins failed. Believing that Collins was intoxicated, Polodna arrested him and took him to the Butler County jail. At the jail, Collins consented to and was given a breathalyzer test. Collins's blood-alcohol content was recorded as 0.107% by weight. These facts led Director to suspend Collins's driver's license and ultimately led to the trial de novo in the circuit court.

At trial, Collins explained that he drove from the Sawdust Saloon because a deputy sheriff told him to leave.

"Q. What possessed you to drive off . . . the parking lot?"

"A. Well, the deputies come up and . . . asked about the fight and who took part . . . and asked the bar manager and . . . she pointed them out. And when they found out who was in the fight and who wasn't, they—he—the deputy sheriff, I don't recall his name, but he come up to me and said—he asked me who I was and if I had anything to do with it. And I said no. And he asked me if I'd been drinking, and I said yeah."

"I said, 'I just live a couple miles down the road here.'"

"And he said . . ., 'Just get in your truck and leave,' is exactly what he said."

. . . .

"Q. Would you have driven off except for what the deputy told you?"

"A. No. No, sir."

Patrolman Polodna testified that he followed and stopped Collins because, when he arrived at the saloon parking lot, a deputy sheriff—which one Polodna could not remember—told Polodna he "ought to stop that subject, that he was involved in the altercation."

■ Collins asserts that Director should be estopped, as a matter of law, from suspending his license for driving with a prohibited blood-alcohol concentration because a deputy sheriff ordered him to get in his truck and leave while the deputy was trying to secure a potential crime scene on the saloon parking lot. Collins argues he was faced with "the Hobson's choice of defying the officer and committing the Class 'D' Felony of interfering with a lawful arrest under R.S.Mo. § 575.150, or, *having advised the officer of his condition*, violating an administrative rule." (Emphasis added.) Consequently, Collins insists he "cannot now be punished by the

State for having complied with a lawful order and refusing to commit a felony."

█ Estoppel is not favored in the law, *Zipper v. Health Midwest*, 978 S.W.2d 398, 411[11] (Mo.App.1998), and rarely applies to acts of a governmental body. *Director of Revenue v. Oliphant*, 938 S.W.2d 345, 346 (Mo.App.1997). The party asserting estoppel bears the burden of proving all the essential elements "by clear and satisfactory evidence." *Oliphant*, 938 S.W.2d at 346[1].

█ The essential elements of an estoppel claim against a governmental entity are:

"1) a statement or act by the government entity inconsistent with the subsequent government act; 2) the citizen relied on the act; and (3) injury to the citizen. In addition, the governmental conduct complained of must amount to affirmative misconduct."

*Missouri Gas Energy v. Pub. Serv. Comm'n*, 978 S.W.2d 434, 439[9] (Mo.App. 1998) (quoting *Coastal Mart, Inc. v. Department of Natural Resources*, 933 S.W.2d 947, 956 n. 5 (Mo.App.1996)).

In all instances, the application of equitable estoppel principles is largely factually based. This court has observed:

" 'No definition of estoppel, however, can be completely satisfactory. An equitable estoppel rests largely on the facts and circumstances of the particular case[;] thus any attempted definition usually amounts to no more than a declaration of an estoppel under those facts and circumstances.' "

*Heitz v. Champagne*, 839 S.W.2d 700, 703 (Mo.App.1992) (quoting *Miskimen v. Kansas City Star Co.*, 684 S.W.2d 394, 400[7] (Mo.App.1984)).

Whether estoppel can ever be a viable defense in a § 302.505 license revocation/suspension case is a question we need not decide. Before such a defense could be seriously considered in this case, Collins would have had to prove, *inter alia*,

some type of affirmative misconduct by the officers involved here. *See Missouri Gas Energy*, 978 S.W.2d at 439[9]. This he failed to do. There is no evidence that the deputy sheriff had knowledge, actual or constructive, that Collins's blood alcohol content was 0.10% or more and that the deputy disregarded or misused this knowledge and ordered Collins to drive anyway. The deputy asked Collins if he had been involved in the fight. Collins answered, "No." The deputy then asked Collins if he had been drinking. Collins responded, "yeah," but volunteered that he "just live[d] a couple miles down the road." The deputy then told Collins to get in his truck and leave. Nothing in the record compels a finding that the deputy knew that Collins was legally intoxicated or that Collins expressed any concern to the deputy about his ability to drive. Although Collins testified that he was concerned about his ability to drive in that he had intended to call a friend to drive him home, he apparently failed to mention this to the deputy when the deputy told him to leave. Collins's assertion that he "*advised the officer of his condition* " simply misrepresents what the record shows.

We also note the lack of any evidence from which it could be found or inferred that the officers colluded to force Collins to drive while intoxicated and then arrested him for that offense. The evidence simply reveals that a deputy sheriff, while trying to disperse a crowd and gain control of a parking lot in the wake of a fight, told Collins to leave after Collins volunteered that he lived near the saloon. Trooper Polodna stopped Collins after he left the parking lot because he had information that Collins may have been involved in the fight. There is no evidence that the same deputy who ordered Collins to leave the parking lot informed or had someone else inform Polodna to stop Collins either because Collins may have been involved in the fight or because Collins had been drinking.

The facts presented simply do not compel a finding that these officers engaged in affirmative misconduct. The trial court did not err in failing to invoke equitable estoppel principles to preclude Director from suspending Collins's license.

■ In a similar argument, Collins urges application of the theory of "outrageous conduct" as a bar to Director suspending his license. Collins relies on *State v. Hohensee*, 650 S.W.2d 268 (Mo.App. 1982), a case in which the defendant sat in his vehicle and acted as a lookout while his companions conducted an illegal break-in. Unbeknownst to the defendant, one of his companions was a police officer and two were burglars employed by the police to work undercover. This court reversed the defendant's conviction, holding that the government action in sponsoring this illegal break-in was outrageous and that "due process bars the state from invoking judicial processes to obtain the conviction of defendant for burglary" under such circumstances. *Id.* at 274[3]. The court reasoned that absent the unlawful conduct of the police and its agents, the defendant's action of sitting in his parked vehicle was lawful conduct. *Id.* at 274.

Collins argues that the facts here are analogous to those in *Hohensee* and that his suspension should be set aside because the deputy's conduct in telling him to get in his truck and leave and the trooper's conduct in stopping and arresting him was illegal and outrageous. We disagree.

The activity by the deputy sheriff and patrolman that led to the suspension of Collins's license involved acceptable practice of law enforcement, not illegal or criminal activity on their part. As noted earlier, the deputy was attempting to bring people under control and investigate a brawl that involved several persons. Collins was on the saloon parking lot and admitted drinking but denied involvement in the fight. No evidence exists to compel a finding that the deputy sheriff knew or should have known that Collins had drunk to the point that his blood-alcohol concentration was 0.10% or more. Collins never suggested to the deputy that he was too drunk to drive. On the contrary, Collins volunteered that he lived nearby in an obvious attempt to convince the deputy that he could safely drive and the deputy should let him go. We find that this record supports the implicit finding that the deputy was engaged in acceptable law enforcement practice when he directed Collins to leave. *See State v. King*, 708 S.W.2d 364, 367 (Mo.App.1986). Also, the record supports the implicit finding that Polodna was following acceptable law enforcement practices when he stopped Collins based on information that Collins may have been in the brawl. *Id.*

Contrary to Collins's argument, nothing in this record compels a finding that the deputy sheriff or patrolman manufactured a crime that would not otherwise have occurred, or that the officers themselves engaged in criminal conduct. *See King*, 708 S.W.2d at 366. The trial court did not err in its implicit finding that there was no "outrageous conduct" by these officers that would mandate reinstatement of Collins's license. *See Provigo Corp. v. Alcoholic Beverage Control Appeals Bd.*, 7 Cal.4th 561, 28 Cal.Rptr.2d 638, 869 P.2d 1163, 1168[7] (1994) (holding that mere use of underage youth as decoys to enforce liquor laws was not outrageous conduct). Point I is denied.

*Point II: Inadmissible Hearsay in Maintenance Check Exhibit:*

■ We reproduce Collins's second point relied on verbatim:

"The Trial Court erred in admitting evidence of the breathalyzer test results because the Trooper who maintained the device testified he did not order the solution and was only repeating out of Court statements when he noted on his report 'RepCo Marketing' as the supplier and in the absence of such evidence, along with [Collins's] objection to the introduction of the breathalyzer results, there was insufficient evidence to admit

the results of the test or to sustain the suspension of [Collins's] driver's license."

At trial, Collins timely objected to testimony from Trooper Polodna regarding the breathalyzer reading, citing a lack of "adequate foundation as to maintenance of the machine." Director's lawyer conceded that, once Collins timely objected, "it is our obligation to make a foundation by showing affirmative evidence that a maintenance check was performed ... within 35 days of the date of the subject's testing." The following discussion then ensued.

"THE COURT: Do you want to take this witness off the stand and put your foundation evidence on, or do you want to—"

"MR. GOOCH [Director's lawyer]: Well, if we could just take it under advisement ... I plan to offer a witness in that regard and the maintenance check."

"MR. ALBRIGHT [Collins's lawyer]: I'll be happy to let him present his case in the order he want to, so long as I have a continuing stipulation to the objection."

"THE COURT: ... Go ahead then and testify, then, subject to later exclusion. And your objection will be shown continuing for the purpose of this case."

Thereon, Director's lawyer asked Polodna about the test result and he answered, ".107 percent blood alcohol content."

■ The foregoing is not the only evidence on this subject, however. During his cross-examination of Polodna, Collins's lawyer asked him, "But when you administered this breath test, it came up .107?" Trooper Polodna answered, "That's correct." Under the circumstances, Collins is

in no position to claim that the trial court erred by admitting evidence of the breathalyzer test results. It is well established that " '[a]n objection to the admission of evidence is waived where the same or similar evidence has been elicited or introduced by the objector.' " *Alvey v. Sears Roebuck and Co.,* 360 S.W.2d 231, 234[3] (Mo.1962) (quoting 88 C.J.S. Trial § 116, at 236); *Bachman v. City of St. Louis,* 868 S.W.2d 199, 201[5] (Mo.App.1994); *Rice v. James,* 844 S.W.2d 64, 68[7] (Mo.App. 1992).

Since Collins elicited evidence from Trooper Polodna that established his blood alcohol content was 0.107%, the foundational prerequisites for admitting the test were unnecessary. *See Reinert v. Director of Revenue,* 894 S.W.2d 162, 164 (Mo.banc 1995). Consequently, Collins cannot show he was prejudiced by the alleged error in the trial court's evidentiary rulings relating to the breathalyzer maintenance questions. After Collins waived his objection to Polodna's testimony about the breathalyzer test results, the trial court could properly consider that testimony although such evidence was otherwise excludable until the foundational prerequisites were shown. *Id.* Point II is denied.

The judgment of the trial court is affirmed.

CROW, P.J., and PARRISH, J., concur.