**Carroll BAILEY and Sue Bailey, Plaintiffs–Respondents,**

v.

**CITY OF GOODMAN, Missouri, Defendant–Appellant.**

**No. 23970.**

Missouri Court of Appeals, Southern District, Division Two.

March 5, 2002.

---

1. *See L.R.M. v. R.K.M.,* 46 S.W.3d 24, 26 (Mo.App. E.D.2001).

Duane A. Cooper, Evenson & Carlin, L.L.C., Pineville, for Appellant.

Andrew Wood, Sims, Johnson, Wood & Farber, Neosho, for Respondents.

JOHN E. PARRISH, Judge.

The city of Goodman, Missouri, appeals a judgment that declared it was estopped from restricting or terminating water service to certain real estate in McDonald County owned by Carroll Bailey and Sue Bailey (referred to in this opinion, collectively, as plaintiffs). This court reverses and remands with directions that the trial court enter judgment for the city.

In January 1998, plaintiffs purchased a tract of land that was partially within the city limits and partially outside the city limits. They purchased the land from Garland Sanny and Cindy Sanny, husband and wife, and Gary Sanny and Nancy Sanny, husband and wife. Garland and Gary are brothers. Their father, Lloyd Sanny, had previously owned the land. It consisted of approximately 55 acres, about 17 of which were in the city limits. At the time plaintiffs purchased the property, there were two watering tanks on the property for cattle. There were also cattle pens and a barn, together with an older garage.

A city water line ran to the part of the property that was within the city limits. There was a meter on the water line. The meter was located within the city limits. Plaintiffs intended to use the property for a livestock operation and to build a residence. They began building cattle pens in April or May of 1998 and started to construct their residence in June or July.

Plaintiffs made alterations to the water line that was on their property. They routed it to serve two new water tanks outside the city limits. An additional one hundred feet of water line was installed. Plaintiffs connected the residence they built to city water. Their residence has 3200 square feet of living space. It in-

cludes three and one-half baths and an in-ground swimming pool. It is located outside the city limits.

The city water line to which plaintiffs' property is connected serves other residences located within the city limits. Shortly after plaintiffs installed the two new water tanks, an occupant of one of the residences reported a sharp reduction of water pressure. The city supervisor investigated the complaint. The supervisor learned that plaintiffs had connected the improvements they had made outside the city limits to city water. Following discussions between city officials and Mr. Bailey, plaintiffs were advised by an attorney for the city to "cease and desist" using city water for the livestock operation on their property. The letter requested plaintiffs to cease use of city water by April 1, 1999. The letter further stated, "As you are aware there is only a small portion of [plaintiffs'] tract within the city limits"; that there was "no agreement whatsoever for the city to supply water outside the city limits." The letter admonished against extending the water derived from the city's line to plaintiffs' home or other facilities. Plaintiffs, nevertheless, connected the house they were constructing to city water. They did so without telling city officials they had connected the residence to city water.

The property owner who reported a decrease in water pressure told the trial court that after plaintiffs built their house and connected to city water, his pressure continued to lessen. He reported that when water was running at plaintiffs' property, his water pressure was reduced to a trickle.

A city employee, David Brodie, testified that there had been 20 pounds of water

pressure before plaintiffs connected their house to city water. Afterwards, there was eight pounds of pressure at the neighbor's house located below plaintiffs' property. Mr. Brodie explained that the city water system "feeds off of gravity flow"; that its pressure varies at different locations around town. He said his tests around town showed "anywhere from 45 to 60 pounds of pressure." He explained that to maintain pressure in the line, the line had to be full of water.

Point I contends the trial court erred in applying the doctrine of estoppel because the trial court did not find there was a written agreement that obligated the city to provide water to plaintiffs or that the city's attempt to disconnect plaintiffs' property from city water was an act of affirmative misconduct. The city argues that, absent those requirements, estoppel may not be imposed against a municipality.

This court finds that Point I, with respect to its claim that the trial court did not find the city committed an act of affirmative misconduct, is dispositive. This opinion will, therefore, not address the other claim of error in Point I or the claim of error in Point II.[1]

■ Initially, this court notes that a municipality's decision regarding whether to extend its domestic water system to a new area within its territorial limits is discretionary. *State ex rel. Cox v. City of Raymore*, 723 S.W.2d 910, 911 (Mo.App.1987). It logically follows that a decision to provide municipal water service to an area outside a municipality's territorial limits would, likewise, be discretionary. The city did not choose to extend water to the part of plaintiffs' property that was outside its city limits. Plaintiffs connected that part of

---

1. Point II contends the trial court erred in not applying a certain municipal ordinance in deciding the case.

their property to city water without the city's consent. In entering judgment for plaintiffs, the trial court found:

2. That after considering all relevant factors, the Court concludes that the Plaintiffs relied upon having water service provided to their property when they purchased the property ... in 1998, and the Plaintiffs had no reason to believe that water service would not continue to be provided to their property after they purchased it. The Court is faced with the situation of balancing the rights of the Plaintiffs who purchased their property, and constructed several improvements including a large residence, on their property, in good faith, relying upon the fact that water had been provided to their property in excess of twenty-five (25) years, with the rights of the City in being able to restrict or terminate water usage to an existing user. The Court must make the necessary weighing of inconvenience and need. The Court finds that in applying this balancing test, Plaintiffs request for estoppel should be granted, and [the city] is estopped from terminating City supplied water to Plaintiffs' property, ....

3. That to not allow estoppel in this matter would create a manifest injustice to Plaintiffs in that they have constructed several improvements relying upon water being provided to their property by [the city], and would incur a greater expense in digging a private well than the City would incur by installing a two inch water line.

■ "Estoppel is not favored in the law, *Zipper v. Health Midwest*, 978 S.W.2d 398, 411[11] (Mo.App.1998), and rarely applies to acts of a governmental body. *Director of Revenue v. Oliphant*, 938 S.W.2d 345, 346 (Mo.App.1997)." *Collins v. Missouri Director of Revenue*, 2 S.W.3d 164, 167 (Mo.App.1999). A party asserting estoppel must prove all required elements of estoppel in order to prevail. *Id.* These elements are "1) a statement or act by the government entity inconsistent with the subsequent government act; 2) the citizen relied on the act; and 3) injury to the citizen. In addition, the governmental conduct complained of must amount to affirmative misconduct." *Missouri Gas Energy v. Public Service Com'n,* 978 S.W.2d 434, 439 (Mo.App.1998).

■ This court's review of the trial court's findings of fact and conclusions of law discloses no finding of affirmative misconduct by the city. The trial court found the city had run its water line to the part of plaintiffs' property that was inside the city limits; that prior owners of the property had run the water line on the property to areas beyond the city limits. It found that prior owners had, on occasion, connected two house trailers that were no longer on the property and one or more stock tanks, all or part of which may have been outside the city limits, to city water. The trial court found plaintiffs relied on the presence of city water as a factor in deciding to purchase their property; that plaintiffs would sustain injury if city water were not available to supply the improvements they subsequently made on the part of the property that was outside the city limits.

The trial court appears to have concluded that the city's extension of its water line to the part of plaintiffs' property within the city limits was an act inconsistent with the city's present intention to restrict or terminate water service to plaintiffs. The trial court found the city's plan to restrict or terminate water service to plaintiffs' property would injure plaintiffs. However, the trial court did not identify any affirmative misconduct by the city. Point I suggests the trial court concluded the

city's plan to restrict or terminate water service was affirmative misconduct. It argues such a finding, if made, was erroneous.

Plaintiffs connected city water to the improvements they made that were outside the city limits. Plaintiffs did not seek approval from the city before connecting the improvements to city water. They connected their residence and swimming pool to city water after the city notified them not to do so. Mindful that application of equitable estoppel rests largely on the facts and circumstances of a particular case, *Heitz v. Champagne,* 839 S.W.2d 700, 703 (Mo.App.1992), this court concludes that the circumstances in this case do not demonstrate affirmative misconduct by the city. The city was faced with significant diminished water supply for some of its residents because plaintiffs were diverting city water to improvements outside the city. Plaintiffs' diversion of city water occurred after they had been admonished not to connect improvements outside the city to city water. The admonishment was given prior to completion of those improvements.

The trial court erred in declaring that the city was estopped from restricting or terminating service to plaintiffs' property. Its determination that all elements of equitable estoppel were proven was not supported by substantial evidence. The trial court, therefore, erroneously applied the law. The judgment is reversed. The case is remanded. The trial court is directed to enter judgment for the city.

GARRISON, P.J., and PREWITT, J., concur.