KC EXCAVATING AND GRADING, INC., Respondent,

v.

CRANE CONSTRUCTION COMPANY, W.H. Koch, Inc., William H. Koch, individually and as trustee of the William H. Koch Trust Agreement, and PHYLLIS L. KOCH, individually and as trustee of the Phyllis L. Koch Trust Agreement, Appellants.

No. WD 62271.

Missouri Court of Appeals, Western District.

June 29, 2004.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 31, 2004.

James McManus, Kansas City, for Appellant.

Theodore C. Beckett, Kansas City, for Respondent.

PAUL M. SPINDEN, Presiding Judge.

In this construction dispute, a subcontractor, KC Excavating and Grading, Inc., charged the general contractor, Crane Construction Company, with breach of contract after Crane fired it before it had completed excavation of a commercial building site in Warrensburg owned by the trusts of William H. Koch and Phyllis L. Koch. The dispute arose in 1997 when KC Excavating decided that contract documents did not specify the scope of the work properly and Crane concluded that KC Excavating was not working quickly enough.

Apparently because KC Excavating had not signed Crane's proposed written contract, the parties operated on the basis of an oral contract. During October 1997, KC Excavating notified Crane that, to satisfy the project's plans and specifications, it would have to excavate more dirt than contract documents indicated. Crane, however, was concerned that KC Excavating was not working quickly enough to keep construction on schedule. Crane told KC Excavating that Crane would consider it to have breached their contract materially if it did not provide written assurances immediately that it would perform its work on time. KC Excavating did not provide the assurances.

On October 14, 1997, amidst continuing disagreement over the amount of excavation required, Crane told KC Excavating not to continue working until the dispute had been resolved. The firms did not resolve the dispute, and, during the following week, Crane terminated its contract with KC Excavating and obtained a replacement subcontractor to complete excavation.

By that time, KC Excavating had excavated 35,000 cubic yards of dirt in addition to what was specified in the contract documents. It spread most of the extra dirt over the property at Crane's direction and stockpiled the remainder for removal. Crane did not pay it for the additional work or other extra work that Crane had requested. Crane also did not pay for a portion of the work indicated in the project's plans and specifications that KC Excavating contracted to complete for the sum stated in its amended bid.

KC Excavating filed a mechanic's lien on the property and filed this lawsuit to enforce the lien, to collect damages from Crane for breach of contract, and to collect in *quantum meruit* from all defendants the reasonable value of its services not covered by contract. The circuit court issued judgment for KC Excavating for $220,435.86, plus costs of the action, on each count. The defendants appeal.

Because this was a court-tried case, the standard set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), governs our review: We must affirm the judgment unless it is not supported by substantial evidence, is against the weight of evidence, erroneously declares the law, or erroneously applies the law. Because the circuit court did not make findings of fact, we deem it to have resolved factual disputes in

accord with its judgment. *Weaks v. Rupp,* 966 S.W.2d 387, 392 (Mo.App.1998).

In its first point, Crane argues that the circuit court erred in ruling that it had breached its contract with KC Excavating because KC Excavating was the party who had failed to perform its contractual obligations and thereby relieved it of its obligation to perform. Crane argues that KC Excavating breached the contract by walking off the job, by not attending to burn pits, by leaving the job site early each afternoon during construction, and by taking more than a day to aerate the soil after rains. We find no merit to the claim.

■ First, the record contains sufficient evidence to support the circuit court's apparent conclusion that KC Excavating did not walk off the job. KC Excavating's president Gary Wyatt testified that his company stopped working because Crane's representative told him not to do any more work until the firms had resolved their dispute concerning additional excavation. He said that KC Excavating did not complete the work because Crane terminated the contract before it could do the work. Faced with conflicting evidence, the circuit court had the discretion to determine witness credibility and to accept all, none, or some portion of the witnesses' testimony. *Leonard v. Leonard,* 112 S.W.3d 30, 32 (Mo.App.2003).

■ Second, even had KC Excavating acted as Crane alleged and even had those acts violated the contract, the acts did not bar KC Excavating from recovering under the contract. A central issue in resolving a claim of breach of contract is materiality of the alleged breach. That Crane was dissatisfied with KC Excavating's work or even that KC Excavating had breached the contract did not excuse Crane's performance unless KC Excavating's breach was material. *Health Related Services, Inc. v. Golden Plains Convalescent Center, Inc.,* 806 S.W.2d 102, 105 (Mo.App.1991). A party cannot claim the benefit of a contract that it was the first to breach, but this rule applies only when the breach is material. *Classic Kitchens and Interiors v. Johnson,* 110 S.W.3d 412, 417 (Mo.App.2003). We find nothing in this record supporting Crane's contentions that KC Excavating was obligated to be on the job site during certain hours, attend to its burn pits, or aerate the soil on any particular schedule. It may have been, but Crane did not establish at trial that KC Excavating had those obligations, but, of more significance, even had KC Excavating been required to do these things, Crane did not establish that KC Excavating's not doing them was material.

■ This leaves Crane's argument that KC Excavating was not entitled to recover additional sums under the contract. Crane first argues that the contract was a lump-sum contract, paying KC Excavating $98,297 for all the work necessary, and that it could not recover additional sums even had it encountered additional work. It further argues that KC Excavating was required to obtain a change order for extra work.[1]

The parties' contract apparently was oral and was supported by written contract documents, including KC Excavating's bid,

1. Crane also asserts in its point relied on that the circuit court erred because "the remaining unpaid balance of the subcontract was exceeded by the amount that Crane Construction paid another subcontractor to finish K.C. Excavating's subcontract work." Crane apparently is suggesting that the circuit court erred in not granting it a set-off as requested in its affirmative defenses. Because Crane does not address the matter in the argument following the point, it is not preserved for our review. *Lasker v. Johnson,* 123 S.W.3d 283, 287 (Mo.App.2003).

the plans and specifications, and Crane's letter of acceptance. Crane submitted a formal, written contract to KC Excavating for signing, but KC Excavating did not sign it. KC Excavating asserts that it never received it. In any event, neither party contends in this appeal that the parties executed a signed, written contract governing their business deal. Instead, they tried the case on the basis that their agreement was reflected in various other documents.

Crane rests its argument that the contract called for a lump-sum payment on KC Excavating's written bid, which said, "Bid for structural excavation and backfill is contingent on KC Excavating & Grading doing the total site grading package." Crane interprets this sentence, and the bid's not making an exclusion for the removal of excess dirt, to mean that it was agreeing to do the total job for $98,297. It reasons:

> The integrated contract is not ambiguous. Crane Construction's subcontract with K.C. Excavating plainly provided for Crane to pay [$98,297] for "doing the total site grading package." The "total site grading package" references the plans and specifications, which mandate that "[e]xcavated material suitable for fill and not required for the site shall be removed from the site."

To the contrary, KC Excavating's bid did not say that it would do the total site grading package for $98,297. It said that its bid was contingent on its doing the total site grading package.

Because the parties had only an oral agreement and because the documents that the parties refer us to do not resolve the issue at hand, the circuit court obviously was obligated to accept parole evidence to discern what their agreement was. Wyatt testified that his firm's bid of $98,297 was for doing the work specified on the bid for site grading and structural excavation and backfill and that "unit prices" referred to additional work not reflected in the plans and specifications. He said that, for "[a]nything above and beyond what [the plans and specifications] reflect to do, those would be the prices to perform that work on site." The plans and specifications reflected that KC Excavating would be required to cut and fill specified amounts of soil to reach plan elevation. They did not reflect that the excavation of an additional 35,000 cubic yards of soil would be required.

Thus, even if Crane is correct that KC Excavating's bid must be interpreted in light of the plans and specifications, those documents did not resolve what was to happen if KC Excavating encountered more soil than contemplated in the plans and specifications. The circuit court, as arbiter of witness credibility, was free to accept Wyatt's explanation of the contract.

Crane further argues that an owner or general contractor providing plans to a subcontractor does not guarantee the accuracy of those plans and that a subcontractor must make his own investigation. Granted, but it makes no difference to the outcome of this appeal. That Crane did not guarantee the accuracy of the plans and specifications and that KC Excavating began without investigating the site would be significant only were Crane correct that KC Excavating had agreed to do the entire project for one lump sum, including work beyond that reflected in the plans and specifications. The circuit court had a sufficient basis for concluding that this was not the agreement.

Crane further argues that a change order was required because on past occasions the parties had used them when KC Excavating did extra work. Crane concedes that it cannot point to any

provision requiring change orders but argues that one should be implied based on the parties' practices and on principles of good faith and fair dealing. Even if Crane is correct—and we need not determine whether or not it is—the absence of a change order in this instance would not preclude KC Excavating's obtaining judgment because parties can waive a change order requirement by orally agreeing to the work. *See Ken Cucchi Construction, Inc. v. O'Keefe,* 973 S.W.2d 520, 524–25 (Mo.App.1998). The circuit court heard evidence that Crane's superintendent, who was aware of the additional excavation that KC Excavating contended was required, told KC Excavating to do the excavation work and that a change order would follow.

■ Crane next asserts that the circuit court erred in not considering a counterclaim against KC Excavating for breach of contract because it had not reasserted it in its responsive pleading to KC Excavating's amended petition. Crane's failure to reassert the counterclaim resulted in its abandonment.

Crane answered KC Excavating's petition and asserted multiple affirmative defenses, but it did not assert a counterclaim. The circuit court granted it leave to amend its answer to include a counterclaim after it claimed to have inadvertently omitted the claim. Crane filed a pleading that it captioned, "Amended Answer, Affirmative Defenses and Counterclaim of Crane Construction Company." The court also granted KC Excavating leave to amend its petition, and Crane responded to the amended petition by filing a pleading captioned, "Answer to First Amended Petition and Affirmative Defense of Crane Construction Company." Crane did not refer to the counterclaim, and the pleading did not include a counterclaim.

Crane asserts that it did not need to refile a counterclaim filed in response to the petition because the claims asserted in KC Excavating's amended petition arose out of the same conduct, transaction or occurrence and related back to the original petition. Assuming that Crane is correct, Crane was not obligated to file its second responsive pleading. *See Mahurin v. St. Luke's Hospital of Kansas City,* 809 S.W.2d 418, 421 (Mo.App.1991) (new response to amended pleading not required if amendments do not raise new matters). But Crane did file a second pleading. Hence, the relate-back doctrine does not assist Crane.

Crane suggests that we should make nothing of its omission because a counterclaim is an independent complaint and can be filed separately from the answer in a distinct document. Thus, it asserts, it should not be deemed to have abandoned its counterclaim only because it did not refile that portion of its response after KC Excavating filed its amended petition. Even assuming that Crane is correct in its premise, it filed one pleading that it subsequently refiled with the conspicuous exclusion of its counterclaim. The only fair inference is that it intended to abandon the prior pleading and counterclaim.

■ Crane further charges the circuit court with error in excluding four of Crane's evidentiary exhibits. The exhibits were bills that a replacement subcontractor sent to Crane for a portion of the work that KC Excavating had agreed to complete but had failed to complete because of its being terminated. Crane argues that the exhibits were necessary to its case.

■ The circuit court has broad discretion in deciding whether to admit or to exclude evidence at trial, and we review not for the evidence's admissibility, but for an abuse of discretion in the court's decision to exclude it. *Terry v. Mossie,* 59

S.W.3d 611, 613 (Mo.App.2001). Because the ruling was within the court's discretion, we accord the ruling substantial deference and presume it to be correct. It is the appellant's burden to persuade us that the circuit court abused its discretion and that the abuse resulted in prejudice. *King v. Copp Trucking, Inc.*, 853 S.W.2d 304, 307 (Mo.App.1993). Even an erroneous evidentiary ruling will not warrant a reversal in the absence of prejudice. Rule 84.13(b); *Jones v. Grant*, 75 S.W.3d 858, 862 (Mo.App.2002).

Crane does not persuade us that the circuit court erred. The circuit court heard the same evidence through Richard Myers, president and general manager of the company that Crane hired to complete the work. Myers testified about the contents of each exhibit and explicitly reported how much that Crane paid it to complete the excavation. We find no merit in Crane's argument that the circuit court's ruling denied it the opportunity to present credible evidence of the costs that it incurred for that work.

■■■■ Crane next argues that the circuit court erred in granting judgment for KC Excavating on each of its claims because the recovery awarded under each count, when added together, constituted duplication of damages for one injury. In a related point, Crane also asserts error in the circuit court's entering judgment for the defendants in *quantum meruit.* The law is clear that a party is not entitled to multiple recoveries for one injury. *Meco Systems, Inc. v. Dancing Bear Entertainment, Inc.*, 42 S.W.3d 794, 810–11 (Mo.App.2001). KC Excavating concedes that it is entitled to only one recovery for its injury.

■■■ The circuit court's granting judgment against all defendants on the *quantum meruit* claim was improper. In granting KC Excavating judgment on its petition to enforce its mechanics lien, it has already granted judgment for KC Excavating against the Kochs for the reasonable value of its services. Indeed, a mechanic's lien is essentially an action in *quantum meruit* entitling the subcontractor to collect the reasonable value of its services. *Commercial Openings, Inc. v. Mathews*, 819 S.W.2d 347, 350 (Mo. banc 1991). To grant judgment against the Kochs on a separate *quantum meruit* claim would allow KC Excavating to recover the value of its services twice. Furthermore, because the circuit court found for KC Excavating on its breach of contract claim, it necessarily determined that Crane materially breached its contract with KC Excavating. In addition, because it awarded damages under the breach of contract claim for the additional excavation work that KC Excavating was required to perform, it necessarily determined that the additional excavation was provided for by the parties' contract. The additional excavation would not have been an item of damage incurred by the breach of contract otherwise. The circuit court allowed for additional work in awarding damages for the breach of contract. It necessarily found that the moving of the 35,000 cubic yards of soil was additional work—not extra work—and that the contract provided for that work and payment pursuant to KC Excavating's unit prices. We discern no sound reason why *quantum meruit* has any application.

■■■ *Quantum meruit* is a remedy for the enforcement of a quasi-contractual obligation and is based on a promise implied by the law that a person will pay the reasonable value for services or materials provided at that person's request or with his approval. *Little Joe's Asphalt, Inc. v. C.W. Luebbert Construction Company, Inc.*, 74 S.W.3d 830, 833 (Mo.App.2002). Perhaps, had the excavation of the 35,000

cubic yards been "extra" work and compensation for it was appropriate, *quantum meruit* would have been an appropriate remedy, but the work was not extra.

█ Work is "extra" if it is entirely independent of the contract and not required for the contract's full performance. By contrast, work is "additional," if it is necessarily required in the contract's performance and which, if not done, results in breach of the contract. *Haughton Elevator Company v. C. Rallo Contracting Company, Inc.*, 395 S.W.2d 238, 245 (Mo.App. 1965).

The circuit court accepted Wyatt's recitation of the parties' contract as including a unit price, noted in KC Excavating's bid, for excavation not called for in the plans and specifications. By accepting KC Excavating's bid, Crane accepted the unit price as part of the contract. Because the parties had a contract covering the additional work, *quantum meruit* does not lie. No cause or purpose is served in recognizing a contract implied in law and awarding precisely the same damages as were awarded to KC Excavating for its breach of contract claim.

█ To the extent the circuit court's judgment could also be interpreted as allowing KC Excavating to recover the reasonable value of its services from the Kochs in addition to the whole of its contractual damages from Crane, this is a matter that the circuit court must rectify on remand. The lien existed because Crane did not pay what it was required to pay KC Excavating under their contract while the Kochs retained the benefits of KC Excavating's services. If KC Excavating collects from Crane its judgment for breach of contract, it has no justification for collecting any sum from the Kochs for the reasonable value of its services or for imposing a lien on the property. If KC Excavating collects from the Kochs the amount that the circuit court determines represents the reasonable value of its services in enforcement of the mechanic's lien—an amount the circuit court must determine on remand as discussed below—it would be equally improper for KC Excavating to collect its full judgment for breach of contract from Crane. In this case, Crane, as contractor, was the party liable for compensating KC Excavating for its services. Any amount that the Kochs are required to pay to KC Excavating for the uncompensated services is ultimately to be paid by Crane. Section 429.140, RSMo 2000. Thus, allowing KC Excavating to collect both judgments would be to allow it to recover at least a portion of its damages twice.

█ In their appeal, the Kochs argue that judgment on the mechanic's lien must be reversed. We agree and remand for the circuit court's modification of its judgment. The circuit court entered judgment for KC Excavating on its petition to enforce the mechanic's lien in an amount of $220,435.86. KC Excavating, however, demanded only $130,500, plus interest. Section 429.210, RSMo 2000, says, "The court . . . may render judgment . . . in any sum not exceeding the amount claimed in the demand filed with the lien, together with interest and costs[.]" Mechanics' liens are creatures of statute, unknown at common law or in equity. *Bush Construction Machinery, Inc. v. Kansas City Factory Outlets, L.L.C.*, 81 S.W.3d 121, 123 (Mo.App. 2002). Section 429.210 prohibits the circuit court from rendering judgment in an amount greater than claimed in the demand, plus costs and interest. We, therefore, must reverse the judgment and remand to the circuit court with instructions that it determine the reasonable value of the services and material furnished and modify its judgment to comport with § 429.210.

The Kochs also contend that other problems prevent KC Excavating from being entitled to enforce its lien. It refers to § 429.520, RSMo 2000, and argues that a judgment on a mechanic's lien is an *in rem* judgment; hence, the circuit court erred in entering judgment against them individually. Section 429.520 is irrelevant to this proceeding. It discusses the nature of the judgment that the circuit court may render, but only in reference to actions to enforce liens under § 429.440, which addresses only liens on railroad property.

The Kochs next assert that judgment on the lien cannot stand because KC Excavating's account of what was due was not the "just and true account" required by § 429.080. We will not review the matter.

Compliance with § 429.080 is a condition precedent to the right to enforce the lien, but a party's failure to challenge a matter of compliance in the circuit court leaves nothing for us to review. *American Property Maintenance v. Monia*, 59 S.W.3d 640, 643–45 (Mo.App.2001). The Kochs did not challenge KC Excavating's compliance in the circuit court; indeed, they stipulated that the only issue in dispute in regard to the mechanic's lien was the proper amount of the claim. Thus, we are not dealing here with a situation in which the requirements of § 429.080 are impermissibly being waived by a party. *See, e.g., George F. Robertson Plastering Company v. Altman*, 430 S.W.2d 169, 172–73 (Mo.1968). Rather, the parties agree that the necessary conditions have been satisfied.

We, therefore, reverse the circuit court's judgment relating to the *quantum meruit* claim and mechanic's lien. We remand the case so that the circuit court may modify its judgment in accordance with our opinion. In all other respects, we affirm the circuit court's judgment.

RONALD R. HOLLIGER, Judge, and LISA WHITE HARDWICK, Judge, concur.