**Robert G. PORTER, Petitioner–
Appellant,**

v.

**DIRECTOR OF REVENUE, STATE
OF MISSOURI, Respondent–
Respondent.**

No. 26251.

Missouri Court of Appeals,
Southern District,
Division One.

Aug. 9, 2005.

Wayne Gifford, Waynesville, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen. and James A. Chenault, III, Assistant Attorney General, Jefferson City, for Respondent.

PHILLIP R. GARRISON, Presiding Judge.

Robert G. Porter ("Appellant") appeals from the judgment of the circuit court of Pulaski County upholding the suspension of his driving privileges, upon trial de novo, pursuant to Section 302.505.1.[1] We affirm.

---

1. All statutory references are to RSMo (Cum. Supp.2003) unless otherwise indicated.

In the early morning of August 30, 2003, Corporal Mike Weber, Jr. ("Corporal Weber") of the St. Robert Police Department, was on patrol in St. Robert when he noticed a blue Ford pickup truck parked in the middle of the roadway. Corporal Weber pulled behind the vehicle, activated his emergency lights, and approached Appellant, who was the driver. Corporal Weber noticed a strong odor of intoxicants on Appellant's breath. He said that Appellant's eyes were dilated, his speech was slurred, but his balance was steady. Appellant agreed to take field sobriety tests, and Corporal Weber administered three: the horizontal gaze nystagmus ("HGN") test, the walk-and-turn test, and the one-leg stand test. He said that during the walk-and-turn test, Appellant was able to hold in a standing position with his right foot in front of his left foot. However, he began the test before being told to do so and during the walking portion "he had to stop several times to steady himself, and then continue the test." During the one-leg stand test, Corporal Weber testified that Appellant swayed the entire time, and hopped several times. With regard to the HGN test, Corporal Weber stated that Appellant's eyes did not have smooth pursuit, his pupils were of equal size, there was a distinct nystagmus at full deviation, and there was an onset of nystagmus before forty-five degrees. Corporal Weber stated that Appellant failed all of the field sobriety tests. He then placed him under arrest for driving while intoxicated. The alcohol influence report completed by Corporal Weber indicates that Appellant informed him, apparently at some point after the tests, that he had fiberbroma in both feet, causing pain and difficulty when walking.

Corporal Weber took Appellant to the St. Robert Police Department where he consented to a breath analysis test. Corporal Weber said that he observed Appellant for fifteen minutes, from a distance of approximately four feet, with Appellant never leaving his sight. He also said that Appellant did not drink, smoke, that he did not vomit to his knowledge, and that he did not observe anything come out of Appellant's mouth. Corporal Weber then administered a breath analysis test to Appellant using a machine for which he was certified by the Missouri Department of Health. He properly completed each step of the checklist, and the device appeared to be working properly. The device returned a result of .12% blood alcohol content by weight for Appellant.

On cross-examination, Corporal Weber admitted that he did not ask Appellant whether he had any physical problems before administering the field sobriety tests. He also stated that he did not check for exterior circumstances, such as flashing lights, before the HGN test. Corporal Weber acknowledged that he received documentation from his instructor when he was certified for field sobriety testing, but he was not sure if it was the National Highway Transportation Safety Administration ("NHTSA") book. Corporal Weber testified that the surface where he administered the field sobriety tests was somewhat level, but that it sloped like every road slopes, and that he did not recall any gravel on the road. He also stated that it was possible that Appellant went to the bathroom during the time that he was at the police station.

Appellant testified that the surface on which the field sobriety tests were administered was not level, but curved and made of two different materials with loose gravel on the surface. He stated that Corporal Weber did not ask him, and he did not volunteer information, about physical disabilities. As regards the observation time at the police station, Appellant stated that he did not stay in the observation room for

the full fifteen minutes, that a second officer took him to the restroom where he urinated and vomited, and that he took the breath analysis test one minute later. He testified that he is an instructor in the Marine Corps military police academy and instructs on the procedures to be followed in DWI arrests. He also stated that he was a certified operator of breath analysis devices. On cross-examination, Appellant stated that he did not inform Corporal Weber that he had vomited within the fifteen minute observation period, but he assumed that information would be conveyed by the officer watching him.

■ We will affirm the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32, (Mo. banc 1976)[2]; *see also Walker v. Dir. of Revenue*, 137 S.W.3d 444, 445 (Mo. banc 2004).

Appellant presents two points on appeal. In his first point, he claims that the trial court erred "in refusing to allow the NHTSA manual into evidence" and that he was prejudiced because if the manual had been admitted, it would have shown that the field sobriety tests were administered improperly and that probable cause did not exist to arrest Appellant for driving while intoxicated.

Section 302.505.1 states that the department of revenue "shall suspend or revoke the license of any person upon its determination that the person was arrested upon probable cause to believe such person was driving a motor vehicle while the alcohol concentration in the person's ... breath

... was eight hundredths of one percent or more by weight." At a trial de novo, the Director must prove by a preponderance of the evidence that "the driver was arrested on probable cause that he or she was committing an alcohol-related offense," and that "the driver had been driving at a time when his or her blood alcohol concentration was at least [.08] percent by weight." *Collins v. Mo. Dir. of Revenue*, 2 S.W.3d 164, 165–166 (Mo.App. S.D.1999)[3] (quoting *House v. Dir. of Revenue*, 997 S.W.2d 135, 138 (Mo.App. S.D.1999)).

■ The trial court has broad discretion in determining whether to admit or exclude evidence, and we review for an abuse of that discretion. *KC Excavating & Grading, Inc. v. Crane Const. Co.*, 141 S.W.3d 401, 407 (Mo.App. W.D.2004). The appellant has the burden of showing the abuse of discretion and the prejudice resulting therefrom. *Id.* at 408.

■ Appellant contends that the manual was required to be admitted into evidence, and that portions of the manual describe the correct procedure for field sobriety tests. He claims that the descriptions show that Corporal Weber did not follow the proper procedure for the walk-and-turn test, specifically that the test be performed on a reasonably dry, hard, level, non-slippery surface. It also requires that officers should first ask subjects if they have any physical disabilities, which Corporal Weber did not do. He claims that the validity of the field sobriety tests were compromised and therefore not admissible as indicators of intoxication to constitute probable cause.

---

**2.** *Murphy* interpreted the provisions of Rule 73.01(c). The provisions of that rule now appear in essentially the same form in Rule 84.13(d), Missouri Rules of Civil Procedure (2004).

**3.** At the time that the *Collins* case was decided, Section 302.505.1 RSMo (Cum.Supp. 1997), required that the alcohol concentration by weight in a person's breath be .10%. The legislature subsequently changed this standard to .08%. Section 302.505.1.

At the outset, we note that Appellant's contention under this point, that the trial court erred in not admitting the NHTSA manual, is unfounded. It appears, from the transcript, that Appellant's counsel offered the manual into evidence following Appellant's testimony and the trial court admitted it. The trial court stated that it took notice of the manual's instruction that an officer should ask a subject if he or she has any physical disabilities before performing the walk-and-turn test. The trial court found that there was sufficient evidence of probable cause and that Appellant was operating a motor vehicle with a blood alcohol concentration in excess of .08% by weight. The record is clear that, contrary to Appellant's contention under this point, the manual in question was admitted into evidence by the trial court at Appellant's request.

■ Appellant also contends that if the manual had been admitted, and in this case it was, it would have demonstrated that the field sobriety tests were improperly administered, with the result that his performance did not provide evidence of probable cause. On cross-examination Appellant elicited testimony from Corporal Weber that he did not check for exterior circumstances, such as flashing lights, before performing the HGN test, but this is his only contention that the HGN test was not reliable. However, as regards this test, the manual states that the HGN test will not be influenced by optokinetic nystagmus, which can result from watching strobe lights, rotating lights or rapidly moving traffic, when administered properly. As to Appellant's contentions regarding the walk-and-turn test, the manual states that "[r]ecent field validation studies have indicated that varying environmental conditions have not affected a suspect's ability to perform this test." Although Appellant contends that he has a foot condition which makes it painful and difficult for him to walk, he did not inform Corporal Weber of this condition before the test, and he introduced no additional evidence at trial to demonstrate that he actually has such a condition. At most, if we grant that everything Appellant claims is true, the reliability of the walk-and-turn test and the one-leg stand test might be affected. The reliability of the HGN test would not necessarily be affected by any external conditions argued by Appellant, and he did not claim that such conditions actually affected his performance on this test. Under *Brown v. Dir. of Revenue*, 85 S.W.3d 1, 4 (Mo. banc 2002), the trial court may, in some circumstances, disregard the results of field sobriety tests that were improperly administered. Here, the trial court chose not to do so, and, in any event, that consideration would not have affected each of the tests.

■ We must also consider the other indications of intoxication that Corporal Weber observed. "Even where an officer does not administer field sobriety tests, he may obtain probable cause to believe that the suspect is intoxicated from other sources of information." *Saladino v. Dir. of Revenue*, 88 S.W.3d 64, 70–71 (Mo.App. W.D.2002). Corporal Weber testified that Appellant was parked in the middle of the road; that he smelled a strong odor of intoxicants on Appellant's breath; that Appellant's speech was slurred; that his pupils were dilated; and that he was irritated by Corporal Weber's presence. In *Saladino*, the appellate court found sufficient probable cause for the officer to believe that the defendant was intoxicated where there was a strong odor of alcohol on his breath (a classic indicator of intoxication), his speech was slurred, he was incoherent, moody, and had difficulty standing. *Id.* at 71. Here, Appellant was not prejudiced as there would have been probable cause to

arrest Appellant even if we took as true his dubious claims regarding the purported failure to admit the NHTSA manual and its effect on the field sobriety tests. Appellant's first point is denied.

■ In his second point, Appellant claims that the trial court erred in admitting the results of the breath analysis test taken by Appellant in that it was not administered in accordance with Missouri Department of Health regulations. He claims that the fifteen minute deprivation period was not restarted after he purportedly vomited.

In support of this argument, he claims that Corporal Weber's testimony was evasive in regard to whether he observed Appellant during the entire fifteen minute deprivation period and cites his own testimony that he vomited one minute before taking the test. He also points to the fact that a surveillance video of the observation room was not produced at trial, and that a second officer supposedly watched him vomit before the test, as support for his claim.

■ Where the Director makes a prima facie case for suspension, the defendant has the burden to rebut the Director's evidence. *Carr v. Dir. of Revenue*, 95 S.W.3d 121, 125 (Mo.App. W.D. 2002). "[T]he driver is entitled to present rebuttal evidence that raises a genuine issue of fact regarding the validity of the blood alcohol test results. The rebuttal evidence should challenge the presumption of validity established by the director's prima facie case." *Verdoorn v. Dir. of Revenue*, 119 S.W.3d 543, 546 (Mo. banc 2003). The trial court then determines whether the Director has proved her case by a preponderance of the evidence. *Id.* at 545.

Missouri regulations provide the operating procedures for breath analyzers. *See* Mo.Code Regs. Ann. Tit. 19 §§ 25–30.0111—25–30.060 (2001). The procedures to be followed for use of the breath analyzer used by the St. Robert Police Department, the Data Master, are included in Mo.Code Regs. Ann. Tit. 19 § 25–30.060 Form # 7. That form requires that the subject be observed for fifteen minutes, with "[n]o smoking or oral intake of any material during this time; if vomiting occurs, start over with the [fifteen] minute observation period." *Id.*

Appellant did not object to the admission of the results of the breath analysis, nor does he contend in this point that a prima facie case was not established by the Director. Appellant attempted to rebut this case at trial by presenting evidence that, if believed, would have shown that Corporal Weber did not follow the proper fifteen minute deprivation requirement. However, Corporal Weber also testified regarding the deprivation requirement and stated that Appellant did not vomit to his knowledge, that he did not observe anything come out of his mouth, and that there was no indication that he vomited in the back of the patrol car. Furthermore, on cross-examination, he stated that he did not observe Appellant vomit and that Appellant was within four feet of him and not out of his sight during the observation time.

■ The trial court, in a license revocation case, weighs the credibility of the witnesses and may decide to reject or accept all, part, or none of the testimony of any witness. *Hawk v. Dir. of Revenue*, 943 S.W.2d 18, 20 (Mo.App. S.D.1997). It is apparent that the trial court believed the testimony of Corporal Weber and not the testimony of Appellant. There was sub-

stantial evidence from which the trial court could have concluded that Appellant did not vomit during the fifteen minute observation period, and the results of the breath analysis were not rendered unreliable for the reason advanced by Appellant. The Director met its burden of proof and Appellant's second point is denied.

The judgment of the trial court is affirmed.

BATES, C.J., and RAHMEYER, J., concur.